UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Shelton DAVIS, III,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence Dana MONTGOMERY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Douglas Hart SNYDER,
Defendant-Appellant.

Nos. 80–1094, 80–1100 and 80–1101.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1981.

Decided Aug. 10, 1981.**

Rehearings in No. 80–1094 Denied Sept. 14 and Nov. 6, 1981.

** Lodged with Clerk July 23, 1981.

Philip A. DeMassa, San Diego, Cal., for Davis.

Donald B. Marks, Marks & Brooklier, Beverly Hills, Cal., for Snyder.

Arthur Mabry, Los Angeles, Cal., for Montgomery.

Eric L. Dobberteen, Asst. U. S. Atty., Los Angeles, Cal., argued for the United States; Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.

Before WALLACE and FERGUSON, Circuit Judges, and MARQUEZ,* District Judge.

WALLACE, Circuit Judge:

Davis was indicted by a federal grand jury on nine counts: two separate conspiracies to violate narcotics laws, five separate substantive offenses involving importation and possession with intent to distribute hashish oil, one charge of conducting a continuing criminal enterprise, and one violation of the income tax laws for filing a false tax return. Snyder was charged with participation in one conspiracy to import and possess with intent to distribute hashish oil and with two substantive offenses of importation and possession with intent to distribute hashish oil. Montgomery was charged in the second conspiracy involving posses-

* Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by designation.

sion with intent to distribute hashish oil and one substantive offense of possession with the same intent. Davis and Snyder were convicted by a jury on all counts charged against them. Montgomery was convicted on the conspiracy to possess count, but was acquitted on the possession with intent to distribute count. All three appeal and we affirm as to Montgomery and Snyder, and affirm in part and vacate and remand in part as to Davis.

I

Between 1976 and mid-1977, the three appellants, along with numerous other individuals, were engaged in a scheme to import hashish oil into the United States. The scheme involved numerous couriers who were employed to act as traveling businessmen. These couriers carried the hashish oil in air pockets of typewriters or tape cassette cases. At trial, the government presented evidence of such trips through the testimony of four different couriers.

Throughout the implementation of the scheme, Davis was the center of the conspiracy. He provided the expense money, clothing, and devices. He was primarily responsible for the instruction of the couriers involved in the scheme. Davis used the money generated by the activities for several different business ventures. He operated a natural food distribution corporation known as Prashadam Distributing International (PDI). Davis was president and major investor of funds for PDI. PDI invested substantial amounts of money in an auto pin-striping business known as Delphi Auto Design (Delphi).

In August 1977, Kulak, an investor in the operation, was kidnapped by two disaffected associates of the PDI/Delphi group (Kieffer and Bovan). In October 1977, Bovan was shot to death. Several members of the Delphi business were arrested for his murder. The subsequent investigation surrounding Bovan's murder resulted in the application for two search warrants by state police officers. The execution of these search warrants produced important evidence introduced during the government's case-in-chief. The first warrant was for the PDI offices. That search produced a tape recording. The second warrant was for a residence known as 71 Blue Lagoon. That search produced a notebook used by one of the government witnesses, Fedorowski, during his testimony.

The following issues were raised by Davis on appeal: (1) whether the district court erroneously failed to make a de novo probable cause finding regarding the two state search warrants in the case, (2) whether the district court erred in finding that the state search warrants established probable cause to search, (3) whether the district court improperly denied an evidentiary hearing designed to traverse the face of the two state search warrant affidavits, (4) whether the district court should have dismissed Count Eight of the indictment for lack of specificity, (5) whether the district court improperly refused to grant a mistrial based on the possible observation by the jury of Davis in manacles while being transported to the courtroom, and (6) whether the district court erred by failing to suppress Davis's 1977 income tax return. Davis and Montgomery raise the issue of whether there was sufficient evidence to support their convictions. Snyder, joined by Davis, questions whether the district court erred by failing to grant Snyder a severance of counts ·in which he was not charged, and whether the district court should have granted a motion for a mistrial based upon the reading of a disapproved jury instruction.

II

Davis has raised several different challenges to the government's use of evidence secured pursuant to the two search warrants. First, he argues that the district judge failed to determine independently whether the state warrants complied with the United States Constitution. The Supreme Court held in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a feder-

al court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Id.* at 223–24, 80 S.Ct. at 1447. Davis argues that in the instant case, the district judge's cursory consideration of the search warrants did not constitute the independent inquiry into the existence of probable cause mandated by *Elkins.* He relies on a conversation which indicates that the district judge was under the mistaken impression that Davis had no right to suppress the search warrants because the warrants were not issued by the United States government or its agents.[1] The record reflects, however, that the district judge did review the documents and specifically found there was probable cause.

██ Next, Davis argues that the warrants are fatally defective in that the supporting affidavits do not state facts sufficient to enable a magistrate to make a determination of probable cause. The complaint is addressed to informant disclosures. The test used for judging the sufficiency of affidavits based on hearsay information provided by an informant is the two-pronged test established in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). First, the affidavit must inform the magistrate of some of the underlying circumstances on which the informant relied to reach his conclusions. Second, the affidavit must inform the magistrate of some of the underlying circumstances from which the officer concluded that the informant was credible or that the information was reliable. *Id.* at 114, 84 S.Ct. at 1514. Facts, rather than the officers' speculations or conclusions, must be provided to the magistrate to substantiate both of these two prongs. *Spinelli v. United States,* 393 U.S. 410, 416–19, 89 S.Ct. 584, 589–90, 21 L.Ed.2d 637 (1969).

██ Davis argues that the affidavits contained conclusory statements and failed to provide sufficient specific information to satisfy the *Aguilar* test. We disagree. The Supreme Court has held that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Both the PDI and the Blue Lagoon warrants resulted from a thorough police investigation conducted before the warrants were sought. That investigation established that Bovan had been shot, and that Kulik was found in possession of a large quantity of white heroin. Within several days of the killing, the police had apprehended Fiori and charged him with Bovan's murder. Fiori had implicated himself as well as other individuals. The only differences between the affidavits supporting

---

1. The following dialogue took place between the attorney for Davis and the court:

 THE COURT: Well, the only question is whether or not these warrants were issued on probable cause. Isn't that so?

 DEFENSE COUNSEL: No. The question is whether or not there is intentional misstatements. The question is whether or not they were made in reckless disregard for the truth.

 THE COURT: But if the state issues subpoenas in the state prosecution, what has that got to do with the federal prosecution?

 DEFENSE COUNSEL: They are using the evidence seized in those warrants for this trial.

 THE COURT: So what?

 DEFENSE COUNSEL: Well, as I understand it, your Honor, I have a right to suppress that evidence.

 THE COURT: No, you don't, not unless they were warrants issued at the instance of the United States government or its agents, and you haven't got any showing of that whatsoever.

 DEFENSE COUNSEL: They were not issued by U.S. agents or governmental authorities.

 THE COURT: No.

 DEFENSE COUNSEL: They were issued by state agents.

 THE COURT: Sure.

 DEFENSE COUNSEL: And they are now being used in federal prosecution.

 THE COURT: So what? There is nothing wrong with that, particularly if the warrants have probable cause, and I'm looking at them and I see that they do have probable cause.

the two search warrants were that the affidavit for the Blue Lagoon warrant stated the background of a different affiant and added the results of the interview with Fedorowski. Both affidavits contained the following information. Informant No. 1 provided personal observations concerning a plan to murder Bovan and others. He provided details of people involved in conversations, times, and locations. Informant No. 2 disclosed conversations with Davis concerning the drug conspiracy. Informant No. 3's information corroborated Informant No. 1's disclosures. Lending support to the accuracy of the disclosures is the fact that Informants Nos. 1 and 3 provided the police with information that was against their penal interests. In addition, the information provided by Informants 1 and 2 was sufficiently detailed to support the magistrate's finding of probable cause. Thus, we find that both search warrant affidavits established sufficient indicia of the informants' credibility to enable the magistrate to exercise independent judgment in establishing the existence of probable cause.

Finally, Davis argues that the district court improperly denied his motion for an evidentiary hearing to traverse the search warrant affidavits and attack their veracity. That issue must be distinguished from the issue of whether each of the affidavits, on its face, supplied probable cause. *United States v. Chesher*, No. 80–1011, slip op. at 969–70 (9th Cir., March 30, 1981). In support of his motion for an evidentiary hearing, Davis relies upon *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in which the Court found that a defendant is entitled to an evidentiary hearing to examine the contents of a warrant affidavit if he or she demonstrates that two conditions have been met. First, the defendant must make a sufficient offer of proof of deliberate falsehood or reckless disregard for the truth by the affiant. Second, the court must make a determination of whether the challenged material is necessary to a finding of probable cause. *Id.* at 171–72, 98 S.Ct. at 2684.

Davis contends that the PDI warrant and the Blue Lagoon warrant both contain deliberate falsehoods and material omissions by the affiants and that therefore, he was entitled to an evidentiary hearing under *Franks*. In support of his motion for an evidentiary hearing before the district judge, Davis submitted portions of sworn cross-examination testimony of the two affiants (Officer Epstein for the PDI warrant and Officer Thompson for the Blue Lagoon warrant) obtained at a state court evidentiary hearing concerning a similar issue.

■ With respect to the PDI warrant, Davis challenges a variety of statements made by Officer Epstein in the affidavit for the search warrant. The only attack we need discuss was that Epstein stated that Informants No. 1 and No. 3 had both been convicted of felonies, but had no known pending cases against them. Davis asserts that affiant Epstein was present when these informants were advised by Detective Amburgey that they were both suspects in a murder conspiracy. Davis does not meet his burden. Obviously there is a difference between their being suspects and their having a pending case against them.

■ The Blue Lagoon warrant, however, presents a much closer question. In addition to the identical attacks as those made in the PDI warrant, Davis also made an offer of proof indicating that Officer Thompson, the affiant in the Blue Lagoon warrant, had no personal knowledge of many of the facts and information he claimed to have in the affidavit. Thompson admitted that much of the affidavit was copied verbatim from the information contained in the PDI affidavit. From the offer of proof, it appears that the officers determined that some of the records they sought at PDI had been removed to 71 Blue Lagoon. The affidavit for the Blue Lagoon search warrant was then typed. The first part was apparently taken directly from the PDI affidavit. Officer Epstein was still at the PDI offices. Therefore, Officer Thompson signed the affidavit. Unfortunately, the affidavit was not changed to state "Officer Epstein was told," but remained in the first-person singular. Thus, Thompson did

not, as sworn to in the affidavit, communicate directly with any of the listed informants. The question is whether Davis's offer of proof was sufficient to put the integrity of the affidavit directly in issue to the extent necessary to meet the first prong of the *Franks* test.

*Franks* presented a similar situation. The affidavit stated that the officer affiant had personally interviewed informants whose information was contained in the warrant. Subsequent investigation, however, revealed that none of the informants had actually spoken to the officer affiant. *Franks v. Delaware, supra,* 438 U.S. at 158, 98 S.Ct. at 2677. The Court found this offer of proof to be a sufficient showing of deliberate falsehood or reckless disregard for the truth of the affiant to require an evidentiary hearing.

A substantial factual difference exists, however, between this case and *Franks.* In *Franks,* there was an offer of proof that although the informants may have talked with an officer other than affiant, "any information given by them to that officer was 'somewhat different' from what was recited in the affidavit." *Id.* Thus, there was an offer of proof showing some additional prejudice in that the alleged statements in the affidavit were different from what was actually said by the informants. Here, there is no indication of any differences between what was said to Epstein and what was claimed to have been stated to Thompson. Indeed, the only other challenges to the Blue Lagoon affidavit pertain to the alleged incorrect factual content of the affidavit, an issue we have already passed upon in our review of the PDI affidavit. The issue is, therefore, whether an evidentiary hearing is necessary when there is no offer of proof that the information given to Epstein was different from the information in the Thompson affidavit.

We conclude that even given this difference, *Franks* appears to compel a limited evidentiary hearing. The holding in *Franks* does not seem to rely upon the fact that the actual statements made by the other officer were different from those in the affidavit. Instead, the holding relies upon the fact that the conversations discussed in the affidavit were not "within the personal knowledge of the affiant[s]." *Id.* at 164, 98 S.Ct. at 2680. We have considered this kind of inaccuracy, in which the personal contact came not from the affiant but from an equally credible officer, "not substantial, although it cast the affidavit in a false light in that it would lead the magistrate to believe that the affiant swore from personal knowledge." *United States v. Esparza,* 546 F.2d 841, 844 (9th Cir.1976) (pre-*Franks* decision). It is true that there was less chance that the magistrate in this case was misled because he had had the opportunity to review both affidavits on the same day. Nevertheless, we find nothing in *Franks* that would allow us to distinguish that case on these facts. These differences, however, are appropriate issues to develop on the merits in the evidentiary hearing.

Thus, we conclude that Davis made a sufficient showing for an evidentiary hearing on the limited issue pertaining to Officer Thompson's incorrect use of the first-person singular in his affidavit.

The district judge did not pass upon whether, if the challenged material was required to be excised, the remaining affidavit could support a finding of probable cause. The first part of the affidavit appears to have been copied almost verbatim from the PDI warrant. It is there that the use of the first-person singular instead of using the name of Epstein appears. If those parts were excised, little more than the information concerning the interview with Fedorowski would remain. That information alone would be insufficient to establish probable cause. The excised material is required as background in order for the Fedorowski statements to be material. Nothing is left to tell a magistrate why the records at PDI were relevant and thus why those which Fedorowski removed to 71 Blue Lagoon were significant to show probable cause. Thus, Davis has met the second prong of the *Franks* test.

We vacate Davis's judgment of conviction and remand to the district court for an

evidentiary hearing on Davis's allegation that Thompson acted with deliberate falsehood or reckless disregard for the truth by incorrectly claiming that he rather than Epstein had personal knowledge of the facts recited in the Blue Lagoon affidavit. In the event that the district judge finds Davis does not prove falsehood or reckless disregard by a preponderance of the evidence, he may reinstate the judgment.

### III

■ Davis also contends that the district court erred by failing to suppress his income tax return. He argues that the government did not comply with the tax confidentiality statute, 26 U.S.C. § 6103, which provides that in a nontax criminal investigation not involving tax administration, the government must seek a court order before it can utilize a tax return. 26 U.S.C. § 6103(i)(1). We need not address this issue, however, because Davis failed to comply with Federal Rule of Criminal Procedure 12(b)(3). Rule 12(b)(3) provides that a motion to suppress evidence must be raised prior to trial. Instead, Davis made the motion near the end of the government's case-in-chief. Davis has failed to prove us with any legitimate explanation for his failure to make a timely objection.

### IV

■ Both Davis and Montgomery have challenged the sufficiency of the government's evidence. On appeal, we must review the evidence in a light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We find that the evidence clearly supports Montgomery's conviction. Montgomery contends that the government failed to show that he had conspired to possess hashish oil as opposed to money. Several of Montgomery's co-conspirators, however, testified concerning his involvement and his knowledge of the drug smuggling aspects of the conspiracy. Thus, in reviewing the evidence in a light most favorable to the government, we find that there was substantial evidence to convict Montgomery.

■ Similarly, we find Davis's conviction was based on sufficient evidence. Four of the couriers gave detailed testimony concerning Davis's role as organizer of the conspiracies. Several other witnesses gave testimony concerning the financial aspects of the operation. Thus, based on the record before us,[2] we find more than sufficient evidence to convict Davis on every count.

### V

■ Snyder argues that his motion for severance pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure was improperly denied. He sought severance of Counts Two, Eight, and Nine, claiming that because he was not named in these counts, he should not be forced to stand trial along with the other defendants involved in those charges.

Rule 8(b) provides:

Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Thus, "[j]oinder of multiple defendants is proper 'only if all of the offenses charged in the indictment arose out of the same series of transactions.'" *United States v. Ford*, 632 F.2d 1354, 1371 (9th Cir.1980), *quoting United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir.1977), *cert. denied*, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978).

---

**2.** In our review of the sufficiency of the evidence, we have examined all of the evidence presented at trial, including the evidence that was produced pursuant to the Blue Lagoon search warrant. We express no opinion on whether there is sufficient evidence to convict Davis on all counts if the district judge finds that the evidence secured by the Blue Lagoon warrant is inadmissible.

To determine whether joinder was proper, we must decide if Counts Two, Eight, and Nine arose out of the same series of acts or transactions as Counts One, Five, and Six (the counts in which Snyder was charged). Snyder was charged with conspiracy to import, conspiracy to possess with the intent to distribute, intentional importation, and possession with intent to distribute hashish oil. Count Two also involved a conspiracy to possess hashish oil with the intent to distribute. That count, however, involved the beating of Robert Klarin to retrieve the hashish oil. Snyder was not involved in the beating. Count Eight was a continuing criminal enterprise count against Davis that incorporated the first seven counts of the indictment by reference in order to establish the necessary elements. Count Nine charged Davis with willfully filing a false return. Again, Snyder was not implicated in this offense.

■ We find that the government has established that all of the counts of the indictment arose out of the same series of acts or transactions. In interpreting Rule 8, we have said:

> " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connections as upon their logical relationship."

*United States v. Friedman*, 445 F.2d 1076, 1083 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971), *quoting Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). The conspiracy counts (Counts One and Two) both involved schemes to possess hashish oil with intent to distribute. At trial, the government relied upon the same witnesses to establish both counts. Because Count Eight incorporated by reference the first seven counts of the indictment in order to establish the necessary elements against Davis, it necessarily encompassed the counts in which Snyder was named. Thus, Counts Two and Eight were properly joined with the other counts.

The government relied upon Davis's narcotics income in order to establish the tax violation found in Count Nine. We have held that "Rule 8(b)'s 'goal of maximum trial convenience consistent with minimum prejudice' is best served by permitting initial joinder of charges against multiple defendants whenever the common activity constitutes a substantial portion of the proof of the joined charges." *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir.1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) (footnotes omitted), *quoting* 8 Moore's Federal Practice ¶ 8.02[2] at 8–36 (2d ed.). The tax charges against Davis resulted from the unreported income arising out of the narcotics activity. Proof of the narcotics conspiracy provided most of the proof of the tax charges. *See United States v. Kenny*, 645 F.2d 1323, 1344–45 (9th Cir.1981). Thus, the income tax count was also eligible for joinder in the indictment under Rule 8(b).

■ Snyder also claims that the trial court should have severed Counts Two, Eight, and Nine under Fed.R.Crim. P. 14, and that failure to do so was an abuse of discretion. Rule 14 provides in part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires....

Because such a determination is addressed to the sound discretion of the district court, our standard of review is limited to abuse of discretion. *United States v. Kenny, supra*, at 1345; *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). Severance under Rule 14 is proper only when the defendant carries the difficult burden of demonstrating undue prejudice resulting from a joint trial. *United States v. Ford, supra*, 632 F.2d at 1373; *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978).

We find that Snyder has failed to meet his burden of showing the required prejudice. The district judge properly instructed the jury by explaining which defendant was charged in each count. Where, as here, the jury has been properly instructed, and Snyder has "failed to show an inability on the part of the jury to compartmentalize the evidence as it relates to each defendant," we have found that the district judge has not abused his discretion in failing to sever. *United States v. Ford, supra,* 632 F.2d at 1374.

Davis joined in Snyder's contentions without argument. Even if he were able to show any standing to assert Snyder's claimed errors, he would be in no better position than Snyder.

## VI

Davis also argues that the district court should have dismissed Count Eight of the indictment for lack of specificity. That count charged Davis alone with a violation of 21 U.S.C. § 848 (continuing criminal enterprise). The second paragraph of the charge included the following language:

> From his engagement in such continuing criminal enterprise, defendant Joseph Davis obtained profits and property which are subject to forfeiture . . . .

Davis argues that because no specific pieces of property were listed in Count Eight, the charge should have been dismissed.

We find this claim to be without merit. The government had advised the court and Davis prior to trial that no attempt would be made to forfeit any property assuming a conviction on Count Eight. Thus, since no forfeiture was sought, it was not necessary to describe further any specific interest in property.

## VII

Davis contends that because the jury observed him in manacles while being transported to the courtroom, he was deprived of a fair trial. Davis failed to raise his objection during trial. There is no indication from the record that this out-of-court exposure of Davis was either aggravated or continuous. *United States v. Figueroa-Espinoza,* 454 F.2d 590, 591 (9th Cir.1972). Thus, in light of Davis's failure to raise any objection to the alleged exposures during trial, we find that the district judge did not abuse his discretion in denying Davis's motion for a mistrial.

## VIII

Snyder and Davis argue that the district court committed reversible error in its instruction to the jury concerning intent and possible inferences to be drawn from the evidence concerning intent. The district court, however, promptly instructed the jury to disregard the incorrect instruction, and reinstructed the jury properly. Thus, any error in the court's original instructions to the jury was appropriately cured. The district judge did not commit reversible error in denying the motion for mistrial.

## IX

In conclusion, we affirm as to Montgomery and Snyder. We vacate Davis's judgment and remand his case to the district court for a limited evidentiary hearing on the affidavit upon which the Blue Lagoon search warrant was based.

AFFIRMED AS TO MONTGOMERY AND SNYDER; AFFIRMED IN PART, AND VACATED AND REMANDED IN PART AS TO DAVIS.