UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Shelton DAVIS, III,
Defendant-Appellant.

No. 82–1205.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1983.

Decided Aug. 30, 1983.

Eric L. Dobberteen, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Philip A. DeMassa, San Diego, Cal., for defendant-appellant.

Before SKOPIL, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This case returns to this court following remand to the district court. On the prior appeal appellant Davis's judgment of conviction was vacated and his case was remanded for a limited evidentiary hearing. The district court was instructed to determine whether the affiant in an application for a search warrant "acted with deliberate falsehood or reckless disregard for the truth by incorrectly claiming that he ... had personal knowledge of the facts recited in the ... affidavit." *United States v. Davis,* 663 F.2d 824, 830–31 (9th Cir.1981). Following an evidentiary hearing, the district court found no deliberate falsehood or disregard for the truth and reinstated the

conviction. We reverse and remand for retrial.

The underlying facts were fully set out in our prior opinion and need only be briefly summarized here. Between 1976 and mid-1977 Davis was involved in a conspiracy to import large quantities of hashish oil into the United States. He used his share of the profits to invest in a variety of business ventures one of which was a food distribution company known as Preshadem Distributing International ("PDI"). In October 1977, Bovan, a former business associate of Davis, was shot to death. The ensuing police investigation resulted in applications for two search warrants: the first for the PDI offices and the second for a residence known as 71 Blue Lagoon. The Blue Lagoon search produced a notebook used by one of the government's witnesses at trial.

On his prior appeal Davis argued that both warrants were defective because the supporting affidavits did not state facts sufficient to allow a magistrate to make a determination of probable cause. This court held that both affidavits established sufficient indicia of the informants' credibility to enable the magistrate to exercise independent judgment in establishing the existence of probable cause. 663 F.2d at 829. Nonetheless, we concluded that Davis was entitled to an evidentiary hearing in which to challenge the Blue Lagoon affidavit.

That conclusion was based on Davis's offer of proof which indicated that Officer Thompson, the affiant in the Blue Lagoon warrant, had no personal knowledge of much of the information contained in the affidavit. Thompson admitted that much of the Blue Lagoon affidavit had been copied verbatim from the PDI affidavit. The PDI affidavit stated that the affiant had acquired much of the information contained therein through personal interviews with various informants. Officer Epstein, the affiant in the PDI warrant, was not available when the Blue Lagoon affidavit was prepared. Rather than wait for him to return Thompson signed the Blue Lagoon affidavit. "Unfortunately, the affidavit

was not changed to state 'Officer Epstein was told,' but remained in the first person singular. Thus, Thompson did not, as he swore in the affidavit, communicate directly with any of the listed informants." 663 F.2d at 829–30.

This court held that Davis's showing satisfied the requirements of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and that an evidentiary hearing was therefore required. In *Franks* the Supreme Court held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676–77. The facts of *Franks* were very close to this case. There the affidavit stated that the officer affiant had personally interviewed the informant whose information was related in the affidavit. The defendant in *Franks* offered to prove that in fact the informants had spoken to a second officer, not the affiant. The Court held that the proffered showing was sufficient to justify an evidentiary hearing.

This court recognized that the facts of this case are somewhat removed from *Franks*. There the defendant alleged that the information recited in the affidavit did not accurately reflect the informants' statement.[1] We nonetheless concluded that

*Franks* was controlling because the Court had based its holding not on the inaccurate reporting of the informant's statements, but on the fact that the conversations discussed in the affidavit were not "within the personal knowledge of the affiant." 663 F.2d at 830 (quoting *Franks v. Delaware*, 438 U.S. at 164, 98 S.Ct. at 2680).

We further held that the challenged portions of the affidavit were necessary to establish probable cause. *Id.* We remanded for a limited evidentiary hearing to determine whether Thompson deliberately lied or recklessly disregarded the truth by claiming that he had personal knowledge of the facts recited in the Blue Lagoon affidavit. Following an evidentiary hearing, the district court found that Thompson did not deliberately falsify or recklessly disregard the truth in drawing up his affidavit. Based on our review of the record on remand we are forced to conclude that that finding is clearly erroneous.

Officer Thompson was the only witness at the evidentiary hearing. His testimony was sometimes confused and contradictory, but several facts clearly emerge.[2] Thompson testified that he was the supervisor in charge of the investigation which culminated in the Blue Lagoon search, and that in this capacity he had personal knowledge of all the underlying information in the Blue Lagoon affidavit. In some cases he was present in the room when the informants were questioned, in others, his investigators (fellow police officers) told him what they had learned.[3]

---

1. Davis also argues that the information contained in the affidavit was inaccurate. That contention was considered and rejected in the previous appeal.

2. Those facts were more clearly stated in Thompson's sworn affidavit dated March 16, 1982, which was also made part of the record on remand.

3. The essence of Thompson's testimony is contained in one paragraph of his March 16, 1982, affidavit:

> As the supervisor in charge of this investigation, I was aware of all of the information

which had been personally gathered by other detectives and officers pertaining to the investigation. I obtained this information from the officers themselves during daily meetings. I was aware of all the information which had been obtained from three confidential informants even though I had not personally spoken to these informants. I accepted as accurate all information relayed to me by those officers whom I supervised because I had worked with them on most occasions, knew them to be trustworthy, and had absolutely no reason to think that they would knowingly relay inaccurate information to me.

Thompson's testimony indicated that he did believe the underlying information in the Blue Lagoon affidavit to be true. The district court apparently focused on that aspect of "truth" in concluding that Thompson did not deliberately or recklessly falsify the affidavits.[4] That analysis completely ignored the truth or falsity of the statements which indicated that Thompson had received the information directly from the informants. The record on remand permits no conclusion other than that such statements in the Blue Lagoon affidavit were often false. Worse still, it establishes that Thompson knew them to be false when he signed the affidavit. In his March 16, 1982 affidavit Thompson stated:

> I was present when the affidavit for the Blue Lagoon warrant was prepared and understood that much of the affidavit was a recapitulation of the earlier PDI warrant. *After the affidavit was typed, I reviewed it and realized that I had not personally spoken to three unnamed confidential informants even though the affidavit clearly implied that I had.* I mentioned this to Deputy Attorney Ron Kreber. Kreber informed me that this warrant was just an extension of the earlier PDI warrant and inquired whether or not I was already aware of all the information stated in the affidavit. I stated that I was already aware of all the information stated in the affidavit. I stated that I was aware of all that information. (emphasis added).

█ Thompson could have relied on the facts learned from his subordinates to prepare a truthful affidavit. *See e.g., United States v. Steed,* 465 F.2d 1310, 1315 (9th Cir.), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 697, 34 L.Ed.2d 667 (1972). This entire problem could have been avoided if Thompson had simply rewritten the affidavit to indicate that he was relying on his officers who had personally interviewed the informants. *See United States v. Ventresca,* 380 U.S. 102, 110–11, 85 S.Ct. 741, 746–47, 13 L.Ed.2d 684 (1965). Similarly, the affiant in *Franks* could have stated that his fellow officer interviewed the informants in question. By failing properly to identify their sources of information the affiants in each case made it impossible for the magistrate to evaluate the existence of probable cause. *Franks* teaches that when, as in this case, that failure is intentional the warrant must be invalidated.[5] The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.

> THE COURT: Well, did you rely on these officers?
> THE WITNESS: Yes.
> THE COURT: Are they good informants?
> THE WITNESS: Yes.
> THE COURT: Have they ever told you a lie?
> THE WITNESS: No, sir.
> THE COURT: All right.

---

4. Although not explicitly stated, the district court's theory of the relevant "truth" is revealed by the following exchange:

> THE COURT: Let me ask you this: Is what you are saying that what you put in the affidavit was what you heard and what was told to you by the investigators, and in that sense, it's true?
> THE WITNESS: Yes.
> THE COURT: Whether what was told to you and told to the investigators is true or not, you don't know.
> THE WITNESS: That's right.
> THE COURT: Because it was done by informants and by Marone, by Rossi, and by Linde.
> THE WITNESS: Yes. I do believe what the officers told me is true and correct completely, though.
> THE COURT: All right.
> [Appellant's counsel]:
> Q. But you have no basis to understand what an informant may have told the officers who told you. Isn't that true?
> A. When I wasn't in their presence, that's true.

5. Under *Franks,* the false statement in the affidavit must have been either intentional or made with reckless disregard for the truth, and must have been necessary to the finding of probable cause, in order for it to render the warrant invalid. *Franks v. Delaware,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77. A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render the warrant invalid that is based on it. *Id.* at 171, 98 S.Ct. at 2684; *United States v. Carlson,* 697 F.2d 231, 238 (8th Cir.1983); *United States v. Hole,* 564 F.2d 298, 302 (9th Cir. 1977); *see United States v. Botero,* 589 F.2d 430, 433 (9th Cir.1978).

Thompson may have thought the inaccuracy unimportant because the affidavit would be examined by the same magistrate who issued the PDI warrant. But a "false oath cannot be justified on the ground that the person to whom it is made knows or should know the truth despite the falsehood." *Keeble v. Sulmeyer,* 290 F.2d 127, 131 (9th Cir.1961). Nor can we accept the proposition that law enforcement officials may freely submit affidavits they know to be false if they deem the falsehood not to be material. While under *Franks* a warrant based upon a false affidavit may be upheld if the falsity was not material, the government in using such an affidavit runs the risk that a reviewing court may subsequently determine " 'that a truthful answer would have been of sufficient probative importance to the inquiry so that, as a minimum, further fruitful investigation would have occurred.' " *United States v. Birrell,* 470 F.2d 113, 115 n. 1 (2d Cir.1972) (quoting *United States v. Freedman,* 445 F.2d 1220, 1227 (2d Cir.1971)) (perjury before a grand jury). In such cases the warrant will be invalid and the resulting search unlawful. *See* 18 U.S.C. § 1621.

The fact that we deal here with false statements made in a warrant affidavit is sufficient to distinguish those cases in which the knowledge of one officer is imputed to another for the purpose of determining probable cause. *See, e.g., United States v. Bernard,* 607 F.2d 1257, 1266–67 (9th Cir.1979). Officers operating in the field are entitled to rely on the information and judgment of fellow officers with whom they are working in close concert. *Id.* The situation is very different when an application is made for a warrant. Unlike officers in the field, a magistrate is not entitled to rely on the judgment of law enforcement officials. He or she is expected to review the material submitted and make a detached, independent judgment as to the existence of probable cause. *Steagald v. United States,* 451 U.S. 204, 212–14 & n. 7, 101 S.Ct. 1642, 1647–48 & n. 7, 68 L.Ed.2d 38 (1981); *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964).

To insure that the magistrate's function has been adequately performed, we must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Our review must seek to determine whether the magistrate in this case had a " 'substantial basis for ... concluding' that a search would uncover evidence of wrongdoing." *Id.* at ——, 103 S.Ct. at 2331 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Based on the findings of the evidentiary hearing conducted in the district court and on our previous ruling, we conclude that the magistrate's neutral and detached judgment in this case lacked a substantial basis because it necessarily relied on an affidavit known to be false. *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

The district court made two additional, alternative holdings. It held that even if the false information were excised from the affidavit sufficient facts would remain to establish probable cause and support the warrant. It also held that even if the warrant were invalid, the admission of the illegally seized notebook would be harmless error. Both of those holdings are inconsistent with this court's decision on the prior appeal.

First, we held that if the challenged material were excised from the Blue Lagoon affidavit the warrant would fail. 663 F.2d at 830. Although the case relied on by the district court on remand, *United States v. Fogarty,* 663 F.2d 928 (9th Cir.1981), was decided after Davis's prior appeal, the case it relied on, *United States v. Dudek,* 560 F.2d 1288, 1292–93 (6th Cir.1977), *cert. denied,* 434 U.S. 1037, 98 S.Ct. 774, 54 L.Ed.2d 786 (1979), was specifically called to our attention in a petition for rehearing which we denied. Moreover, we do not read *Fogarty* as standing for the proposition that any defect in a warrant affidavit may be cured by reference to a second affidavit. In *Fogarty* the two affidavits were filed

and considered together and there is nothing to indicate that any omission which did occur was other than unintentional.

■ Second, our conclusion that any error in admitting the notebook seized at the Blue Lagoon residence was not harmless was implicit in our holding. The remand was for a *limited* evidentiary hearing to determine Thompson's degree of scienter. In going beyond that task to contradict our implicit holding the district court exceeded this court's mandate.

We conclude that the Blue Lagoon affidavit failed to meet the requirements of *Franks.* The defendant established the intentional falsity of the allegations contained in the Blue Lagoon affidavit by a preponderance of the evidence. As determined on the prior appeal, the remaining portions of the affidavit were insufficient to support a finding of probable cause. The warrant was therefore invalid and the evidence seized under it should have been suppressed. We reverse and remand for retrial.