**UNITED STATES, Plaintiff–Appellee,**

v.

**Timothy Don WARE and Steve Alan Daniels, Defendants–Appellants.**

Nos. 88–2581, 88–2584.

United States Court of Appeals, Tenth Circuit.

March 9, 1990.

Rehearing Denied April 24, 1990.

Edward Y. Crandall, Midwest City, Okl., for defendants-appellants.

D. Blair Watson, Asst. U.S. Atty. (Robert E. Mydans, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before SEYMOUR and ANDERSON, Circuit Judges and KANE,* Senior District Judge.

KANE, Senior District Judge.

This opinion addresses two of eight related appeals arising out of the convictions of members of a heroin ring operating out of Oklahoma City, Oklahoma. Each defendant has filed a separate brief. Because many of the defendants' contentions are the same, the government has filed one brief responding to seven of the eight appeals. This opinion addresses the appeals of defendants Timothy Don Ware and Steve Alan Daniels. All the issues save one in the two appeals are identical. Ware has raised one additional matter, which is discussed below.

Ware and Daniels appeal their convictions for participation in racketeering activities, conspiracy to participate in a criminal racketeering enterprise, conspiracy to possess with the intent to distribute heroin, possession with the intent to distribute heroin, use of the telephone to facilitate distribution of heroin, and other charges. They appeal on the grounds that (1) evidence obtained by a wiretap should have been suppressed because the wiretap was illegal under Oklahoma law, (2) without the wiretap evidence, their convictions for use of the telephone and RICO conspiracy charges cannot stand, (3) the trial court should have

---

* Honorable John L. Kane, Jr., United States Senior District Judge, District of Colorado, sitting by designation.

declared a mistrial because one or more jurors saw the defendants handcuffed in the hallway, (4) sentencing was improper because the indictment did not allege the quantity of heroin distributed and therefore the defendants' sentences could not be enhanced. Defendant Ware additionally argues that the prosecution's use of evidence of two prior heroin distribution convictions was unduly prejudicial.

## I. *Facts.*

Defendants Ware and Daniels were individuals involved in a large heroin distribution organization. The organization was led by Johnny Lee Sanders. Sanders employed a number of people to assist him, many of whom used digital pagers in their operations. Ware and Daniels' role in the organization was to sell individual units of heroin, packaged in balloons, to the organization's customers. The defendants were implicated in the organization by the testimony of certain of its former customers, co-defendants, undercover detectives, and through over forty electronically-intercepted telephone conversations.

## II. *Issues.*

### A. *Legality of Wiretap.*

■ The defendants' first argument is that the wiretap of the organization's telephones was illegal and the evidence obtained during this wiretap should have been suppressed under 18 U.S.C. § 2518(10)(a)(ii). Their argument is based on Article II, Section 12 of the Oklahoma Constitution, which provides that "no person holding any office of trust or profit under the laws of any other State or of the United States, shall hold any office of trust or profit under the laws of this State." In essence, the defendants contend that it was illegal for Oklahoma City police officers Robert Nash, Charles Hill, and Ed Killebrew to execute the wiretaps because these officers vacated their state positions when they were deputized as federal agents of the DEA or as United States marshals. Since the wiretap order was directed to the Oklahoma City Police Department, Ware and Daniels argue it was executed by unauthorized persons.

The district court denied the defendants' objection to the admission of this evidence based on the illegality of the wiretap. The judge agreed that the officers in question were public officers under the Oklahoma Constitution, but found that the state statute relating to the interchange of employees between state and federal agencies, Okla.Stat.Ann. tit. 74, §§ 1251–57 (1987), expressly authorized the dual appointment of state law enforcement officers to federal agencies and placed certain salary and benefit limitations on such employees to prevent the kinds of conflicts of interest targeted by the constitutional provision. In addition, the Oklahoma wiretap statute provides that both federal and state officers can obtain a wiretap. *See id.* tit. 13, § 176.2(8). Given this statutory scheme, the district court concluded it was not improper for the Oklahoma City Police Department, the organization to which the wiretap order granted authority, to utilize federal officers to carry out its implementation. The government adopts this argument, and further contends that, even if the officers forfeited their state offices by accepting a federal appointment, their actions are still valid as to third parties.

We do not accept the contention that the officers in question were public officers under the Oklahoma Constitution. In *Battiest v. State,* 755 P.2d 688 (Okla.Crim.App. 1988) the Court of Criminal Appeals of Oklahoma held that a lawyer who was an assistant United States attorney and was appointed an Oklahoma assistant district attorney did not violate Article II, Section 12 of the Oklahoma Constitution so as to invalidate a conviction for murder. The court held, "However, since an Assistant District Attorney does not occupy a public office, but instead is an employee of an elected official, Article II, § 12 of the Oklahoma Constitution is inapplicable to this case." 755 P.2d at 689.

The *Battiest* opinion cites *Grand Jury of McCurtain County v. Cecil,* with approval for this proposition:

An assistant district attorney is an employee of an elected district attorney, not an officer. He carries out official public duties, but only in the name of the elected district attorney who hires him and only those duties that the district attorney chooses to delegate.

679 P.2d 1308, 1309 (Okla.Ct.App.1983). For its authority the *McCurtain* opinion cites *Farley v. Board of Education of Perry*, which holds:

An office is a public charge or employment, but not every employment is an office. The duties of an officer are fixed by law, and an employment arising out of a contract, whereby the *person employed acts under the direction or control of others, and which employment depends for its duration and extent upon the terms of such contract, is not an office.*

620 Okla. 181, 162 P. 797, 799 (1917) (emphasis added). We conclude that the provisions of Article II, Section 12 of the Oklahoma Constitution, as interpreted by several Oklahoma courts, does not apply to police officers who carry out duties delegated to them by an official holding an office of trust or profit under the laws of the State of Oklahoma.

Since the employee interchange statute provides that employees of the "sending agency" (here, the Oklahoma City Police Department) may be considered on detail to regular work assignments of the sending agency when participating in an interchange, *see* Okla.Stat. tit. 74, § 1254(a) (1981), it is clear the police officers remained state employees during their federal commission and were therefore authorized to execute the wiretap. Moreover, although the state's wiretap statute does not specifically address who may *execute* a wiretap authorization, *see id.* tit. 13, §§ 176.1–.13 (Supp.1989), it does permit a "law enforcement officer" to disclose information obtained in an authorized wiretap to other officers and to use that information to carry out his official duties. *See id.* § 176.8(A), (B). A "law enforcement officer" is defined in the statute to include officers employed by the federal government. *Id.* § 176.2(8). Consequently, we affirm the district court's ruling that the wiretap was not unlawfully executed and that information obtained during the tap was admissible.

## B. Sufficiency of the Evidence.

The defendants next argue that their convictions on racketeering and conspiracy charges cannot be sustained because they are based solely on the evidence obtained by the allegedly illegal wiretap. Without this evidence, they argue that they cannot be convicted of the counts of use of a telephone to facilitate distribution of heroin and for conspiracy to participate in a criminal racketeering enterprise, both of which were established through the use of taped telephone conversations. These contentions require little discussion; since the legality of the wiretaps is upheld, these convictions shall stand.

## C. Mistrial for Juror Misconduct.

■ Ware and Daniels' third argument is that a mistrial should have been declared when the court was informed that at least one juror had observed them and another defendant, Marion Johnson, handcuffed together in the hallway of the courthouse. The court questioned the juror who had seen the defendants, and the juror stated that she did not think that this exposure would affect her ability to be impartial. The court then questioned the remaining jurors, one of whom had also noticed the defendants; none felt that this would prejudice them. On this basis, the court denied the defendants' motion for a mistrial.

In their brief on appeal, the defendants cite no authority relevant to juror prejudice on these facts. Instead, they rely on the "strong presumption arising from improper juror contacts and ... the heavy burden upon the government to rebut the presumption." The government notes, on the other hand, that brief and inadvertent exposures of handcuffed or manacled defendants to jurors is not inherently prejudicial, citing *United States v. Robinson*, 645 F.2d 616, 617 (8th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981), and

*United States v. Davis,* 663 F.2d 824, 833 (9th Cir.1981). *Robinson* is distinguishable. In that case the juror did *not* notice that the defendant was handcuffed *or in* waistchains and simply assumed that he was in custody because of the presence of federal marshals. 645 F.2d at 617. *Davis,* however, is more on point because the juror witnessed the defendant in manacles being transported to the courtroom. 663 F.2d at 833. The defendant, however, made no objection after this exposure during trial. *Id.* The court affirmed the denial of the mistrial because there was no indication that the exposure was aggravated or continuous and because the defendant had not objected. *Id.*

The denial of a motion for a mistrial is reviewed for an abuse of discretion. *United States v. Peveto,* 881 F.2d 844, 859 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). Recently, a number of circuits have upheld the principle that " 'in the absence of a showing of prejudice ... a fleeting glance by jurors of a defendant outside the courtroom in handcuffs does not justify a new trial.' " *United States v. Garcia–Rosa,* 876 F.2d 209, 236 (1st Cir.1989) (citation omitted), *cert. denied,* — U.S. —, 110 S.Ct. 742, 107 L.Ed.2d 760 (1989); *see also United States v. Halliburton,* 870 F.2d 557, 560–61 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3227, 106 L.Ed.2d 575 (1989). We reached this same conclusion some time ago in *Glass v. United States,* 351 F.2d 678, 681 (10th Cir.1965). Given that it is the defendants' burden to show prejudice, and that the court questioned the jurors and found no indication of bias from this incident, the denial of a motion for mistrial is affirmed.

### D. *Enhanced Sentences.*

■ The defendants next contend their sentences were improperly enhanced under the sentencing guidelines because the indictment did not allege the quantity of heroin distributed by the organization. (The amount, in excess of 30 kilograms, was contained in the presentence report.) The defendant's argument is premised on two pre-sentencing guideline cases, *United States v. Crockett,* 812 F.2d 626 (10th Cir.

1987), and *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984). In *Crockett,* we held that a defendant who had pleaded guilty to one count of conspiracy to possess with intent to distribute a minimal quantity of marijuana could not be sentenced to a longer term based on a greater amount of marijuana when the indictment did not allege the higher amount. 812 F.2d at 629. Similarly, in *Alvarez,* the Eleventh Circuit struck down the enhanced sentences of several defendants based on possession with intent to distribute more than 1,000 pounds of marijuana because the indictment did not specifically allege this quantity. 735 F.2d at 467–68. The defendants argue that these pre-guidelines cases should be applied to this case to preclude their enhanced sentences.

The government responds by pointing out that, with the exception of Ware and Daniels' sentences on Count 3 for conspiracy to possess with intent to distribute heroin (33 and 21 years, respectively), their sentences did not exceed the statutory maximum applicable to an unenhanced charge. With respect to Count 3, the government argues that neither Ware nor Daniels objected to their sentences on this basis, noting they had notice in the presentence report that their sentence could carry a maximum penalty of life imprisonment.

A recent line of cases holds that a judge may consider quantities of drugs involved in a crime but not charged in the indictment in determining the base offense level during sentencing under the sentencing guidelines. *See, e.g., United States v. Mann,* 877 F.2d 688, 690 (8th Cir.1989); *United States v. Sailes,* 872 F.2d 735, 738–39 (6th Cir.1989); *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.); *accord, United States v. Roberts,* 881 F.2d 95, 104 (4th Cir.1989) ("We do not hold that in possession with intent to distribute cases the BOL [base offense level] is limited to the amount charged in the indictment, when the proof at trial clearly establishes a larger amount."). Accordingly, we uphold these defendants' sentences. The application noted to § 2D1.1 of the guidelines further specifies that types and quantities of drugs

not contained in the count of conviction may be considered in determining the base offense level. U.S.S.G. § 2D1.1, comment (n. 12). Guideline 2D1.1 is the appropriate guideline for offenses committed under 21 U.S.C. §§ 841(a) and 841(b)(1)–(3).

E. *Evidence of Ware's Prior Convictions.*

Defendant Ware finally contends the court below erroneously permitted testimony of his two prior heroin convictions in 1986. He argues that since his character was not in issue, evidence of these prior convictions is inadmissible under Fed.R. Evid. 404(b). He also argues, under Fed.R. Evid. 403, that the evidence was so inherently prejudicial that it should have been excluded. Ware concedes, however, that this evidence was admitted not as character evidence, but to show a scheme or common motive and as proof of the conspiracy and racketeering charges.

In its brief, the government argues that Rule 404(b) applies only to acts unrelated to the charged crime. Since the convictions at issue were for heroin purchases made in 1986, during the time that Ware was participating in the conspiracy at issue here, this evidence cannot be excluded under Rule 404(b). The government further notes that it did not offer evidence of the convictions, only testimony as to the purchases underlying the convictions.

The testimony as to the two prior heroin transactions, resulting in Ware's prior convictions, were indeed probative of the conspiracy/plan to distribute heroin, and therefore are admissible under Rule 404(b).

III. *Conclusions.*

The district court's rulings on all issues are affirmed.