**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Damazo Solache VALDOVINOS, Defendant—Appellant.**

No. 02–30427.

D.C. No. CR–01–60051–01–HO.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 2004.

Decided June 28, 2004.

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

222

Sean Hoar, Office of the U.S. Attorney, Eugene, OR, for Plaintiff–Appellee.

Lynn Shepard, Eugene, OR, for Defendant–Appellant.

Before HUG, McKEOWN, and
FISHER, Circuit Judges.

## MEMORANDUM *

Valdovinos was charged and convicted of (1) conspiracy to distribute 50 grams or more of actual methamphetamine, (2) distribution of 5 grams or more of actual methamphetamine, and (3) possession with intent to distribute 5 grams or more of actual methamphetamine, all in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 360 months imprisonment.

Valdovinos appeals the district court's denial of his motion to suppress evidence obtained during the search of his residence. He argues that DEA agents intentionally and recklessly omitted material information about the confidential informant from the affidavit in support of the search warrant. He also challenges his sentence. He contends that the district court's approximation of methamphetamine attributable to him, as well as its application of the two-level obstruction of justice enhancement pursuant to United States Sentencing Guidelines (U.S.S.G.) § 3C1.1 were in error.

### *Search Warrant*

"The district court's factual findings as to whether statements in an affidavit were false or were omitted are reversed only if clearly erroneous. Whether any omissions or misstatements are material is a mixed question of law and fact which we review de novo." *United States v. Vaandering*, 50 F.3d 696, 699–700 (9th Cir.1995).

* This disposition is not appropriate for publication and may not be cited to or by the courts

The district court held a hearing on Valdovinos's motion to suppress evidence seized in the search of his home. The district court found that the search warrant affidavit did not recklessly contain false information, did not omit significant information, and was not based on stale information.

Valdovinos argues that the DEA agent recklessly failed to include material information about the confidential informant in his affidavit filed with the application for the search warrant. Specifically, Valdovinos claims that the agent failed to disclose the full extent of the confidential informant's compensation, that she had been convicted of theft, that she used drugs throughout her term as a confidential informant, and that she suffers from mental disorders.

To successfully attack the search warrant, Valdovinos had to show (1) that the DEA agent intentionally or recklessly included false statements or omitted material information in the affidavit, and that (2) without the false statements, or with the omitted information, the affidavit would not have been sufficient to support a finding of probable cause. *See United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995). The false statements in the affidavit must have been made recklessly or intentionally. "A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant that is based on it." *United States v. Davis*, 714 F.2d 896, 899 n. 5 (9th Cir.1983); *see also Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Kyllo*, 37 F.3d 526, 528 (9th Cir.1994).

of this circuit except as provided by Ninth Circuit Rule 36–3.

The affidavit did state that the confidential informant was receiving compensation in exchange for her cooperation. Further, the evidence shows that the informant's theft conviction was not omitted recklessly or intentionally.[1] Although the confidential informant acknowledged that she suffers from a minor form of a bi-polar disorder, testimony supports her contention that it does not affect her perceptions in daily activities.

■ Valdovinos also argues that the search warrant was based on stale information because the drug buys on which the warrant was based occurred about nine months prior to the issuance of the warrant. He argues that there was no basis for the finding that drugs or paraphernalia were likely to be present at his address when the warrant issued.

"The information offered in support of the application for a search warrant is not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (internal quotation omitted).

In *Gil*, we "recognized that in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Gil*, 58 F.3d 1414, 1418–19 (9th Cir.1995) (internal quotation omitted).

The search warrant in this case included information regarding multiple purchases, the DEA agent's experience and training regarding evidence often found in drug dealers' homes, and the recently confirmed information that Valdovinos still resided at the home in question. The magistrate judge reasonably drew the inference that evidence of Valdovinos's drug trade was likely to be kept at the residence.

Because the DEA agent did not intentionally or recklessly include false information or omit material information in his affidavit in support of the search warrant, and because the affidavit was not based on stale information, we affirm the district court's denial of Valdovinos's motion to suppress the evidence obtained from the search of his residence.

### Sentencing

■ Valdovinos argues that the district court did not base its approximation of the quantity of drugs involved in his offense on sufficiently reliable evidence to support the determination of his base offense level of 38.

Comment 12 to Sentencing Guideline § 2D1.1 states:

Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

---

1. The confidential informant was, in fact, convicted of a Theft 3 violation in 1995. However, the DEA agent testified that he ran a computerized criminal history for the informant that showed that she had been arrested once on assault charges, but that no complaint had been filed. He included this information in the affidavit. Valdovinos failed to prove by a preponderance of the evidence that this non-disclosure, given the criminal history check, was intentional or reckless.

(internal citation omitted); *see also United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir.2002).

The government presented witnesses at trial who described drugs they had purchased from Valdovinos, or that they helped Valdovinos package or distribute. These amounts, when added to the drugs seized during the search and through the controlled buys, exceeded 32 kilograms of methamphetamine attributed to Valdovinos. The district court gave Valdovinos every benefit of the doubt. The court only multiplied the number of ounces by 25, though an ounce is actually 28.47 grams; when a witness approximated the amount of drugs, the court used the low end of the approximated amount; and the court reduced the total amount of methamphetamine attributed to Valdovinos by another 800 grams. Despite these safeguards, the total amount of methamphetamine attributable to Valdovinos was in excess of 31 kilograms—more than twice the amount necessary for the maximum offense level under the guidelines (38). *See* U.S.S.G. § 2D1.1(c)(1).

Because we have already approved of this method of approximating the quantity of methamphetamine attributable to Valdovinos, and because the district court's factual findings regarding the actual amounts attributed to Valdovinos are not clearly erroneous, we affirm the district court's calculation and the base offense level of 38.

Valdovinos argues that the district court erred in applying the two-level obstruction of justice enhancement pursuant to Sentencing Guideline § 3C1.1 because the evidence does not support the conclusion that he willfully threatened or intimidated any government witnesses.

The record shows that agents Flannery and LaFollette of the DEA were told by witnesses David Graves and Jeff Sanders (two witnesses who testified to amounts of methamphetamine attributable to Valdovinos) that they were told not to testify.[2] Specifically, "David Graves was approached by a large Caucasian individual and told that the individual had heard that Mr. Graves had agreed to testify, and that he should keep his mouth shut.... A few days prior to trial, witness Jeff Sanders was approached by three Hispanic males who told him that if he knew what was good for him, he should not testify."

The government conceded that it did not have direct evidence that Valdovinos facilitated these threats. However, the government showed that it filed its witness list under seal due to concerns of this specific type of occurrence (witness intimidation by defendant's associates). Because the names were under seal, and based upon the stipulated testimony of agents Flannery and LaFollette, the district court found that "the threats to the witnesses could only have come from defendant." Although a close call, we cannot say the district court's finding is clearly erroneous.[3] Therefore, we affirm the district

2. At the December 10, 2002 sentencing hearing, Valdovinos stipulated that if called, Flannery and LaFollette would testify to the information provided by the government on page 15 of its Amended Sentencing Memorandum. The information in the Amended Sentencing Memorandum is therefore treated as testimony.

3. Valdovinos also argues that the factual findings underlying this enhancement should

have to be proved by clear and convincing evidence because the enhancement "has an extremely *disproportionate effect on the length*" of his sentence. However, the two-level enhancement only changes his sentence range from 292–365 months to 360 months-life. Because he was sentenced to 360 months, a sentence within the range with or without the enhancement, the enhancement did not have an extremely disproportionate effect on the length of his sentence. *United*

court's application of the two-level enhancement.

### *Conclusion*

For the reasons discussed above, we affirm the district court's denial of Valdovinos's motion to suppress, as well as the district court's approximation of methamphetamine attributable to Valdovinos and the application of the two-level obstruction of justice enhancement.

**AFFIRMED**

*States v. Jordan,* 256 F.3d 922, 927 (9th Cir. 2001).