**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL W. BALDWIN, DDS;
GEORGIA CHACKO,
       *Plaintiffs-Appellees,*

     v.

PLACER COUNTY; TRACY GRANT;
RON GOODPASTER; BRIAN WIGGAM;
KEVIN BESANA; STEPHEN L.
D'ARCY; JEFFERY POTTER; PLACER
COUNTY SHERIFF'S DEPARTMENT;
Officer REED,
      *Defendants-Appellants.*

No. 04-15848

D.C. No.
CV-01-01177-MCE

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
March 18, 2005—San Francisco, California

Filed April 19, 2005
Amended August 8, 2005

Before: John T. Noonan, Sidney R. Thomas, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

David K. Huskey, Auburn, California, for the defendants-appellants.

J. David Nick and Paul R. Turley, San Francisco and Oakland, California, for the plaintiffs-appellees.

Kate Wells, Santa Cruz, California, for plaintiff-appellee Georgia Chacko.

## ORDER

The opinion filed on April 19, 2005 is amended as follows:

At slip op. p. 4410, l. 3-4, change sentence to read: "On the conceded facts before us, whatever exigency existed was insufficient to justify the batteries."

At slip op. p. 4410, at the end of the first paragraph ending "a practicing dentist and his wife.", add "We conclude that 'the law at th[e] time [of the search] . . . clearly establish[ed]

that the officer's conduct could violate the Constitution.' *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2005)."

At slip op. p. 4411, at the end of the second paragraph ending "bleached out.", add a new paragraph.

> The County invokes a fundamental case on the Fourth Amendment, *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* does permit a court to purge the false statements and to sustain the warrant if the unpurged residue would justify it. But what will sustain the warrant must already be within it. The County is pointing to evidence not cited in the warrant. That evidence cannot sustain the warrant. *See United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983) (under *Franks*, "[t]he fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.").

With this amendment, the panel has voted to deny the petition for rehearing. Judges Thomas and Fisher have voted to deny the petition for rehearing en banc and Judge Noonan has so recommended.

The full court has been advised of the petition for rehearing en banc, and no active judge has requested a vote whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

The panel will not entertain any new petitions for rehearing or petitions for rehearing en banc.

## OPINION

NOONAN, Circuit Judge:

Placer County and several of its police officers (collectively, the County) have taken this interlocutory appeal from the district court's denial of their motion for qualified immunity in this 42 U.S.C. § 1983 action brought by Michael Baldwin and Georgia Chacko (the plaintiffs). On the basis of the facts conceded as undisputed by the County for purposes of this appeal, we hold that the County violated established constitutional rights of the plaintiffs and that qualified immunity was properly denied.

### FACTS

On September 22, 1998, Jeff Potter, an officer of the marijuana eradication team (MET) of the County's Sheriff Department, applied for a search warrant for the residence of Michael Baldwin and Georgia Chacko, then Baldwin's wife. The affidavit stated that on July 16, 1998, Deputy Mark Reed had told Sergeant Kevin Besana that "a citizen informant" had told him that Michael Baldwin, a dentist, was "possibly growing marijuana." The date when this information was given and the date when Baldwin was possibly growing marijuana were not stated in the affidavit. Potter stated that Besana had passed this tip to him and that four days after receiving it, he confirmed Baldwin's office address as a dentist and obtained the registration number of his car; Potter used the car registration to confirm the informant's statement as to Baldwin's home address. A check of DMV records showed Baldwin to be 35 years-old, 5′ 9″, weighing 165 pounds and Georgia Chacko to be 34 years-old, 5′ 5″, weighing 125 pounds.

On September 16, 1998, so the affidavit continues, Potter searched the trash at Baldwin's home address. He found "marijuana leaves and stems recently cut from a mature marijuana plant. The marijuana was fresh green and still moist."

He also, he said, had found "marijuana seeds and a hydroponic grow rock. There were also two black 1/2 gallon planting pots commonly used in indoor marijuana grows and four packages of 'rain drop' irrigation equipment commonly used in indoor marijuana grows." He concluded on the basis of his specific training in the investigation of narcotics and his ten years of experience in approximately three hundred narcotics cases that "[t]he items found in the trash inspection reveal an ongoing criminal activity to grow marijuana indoors." He also concluded that "it is common for persons involved in the cultivation of marijuana to also be involved in the sale of marijuana." Potter sought a warrant listing the documents and property he expected to find; he did not mention guns. On September 23, 1998, a state court judge issued the search warrant that Potter sought.

According to the plaintiffs' evidence, the only marijuana in their trash searched by Potter were blackened bits of marijuana wrapped in a paper towel, the remnants of smoked marijuana. They bolster their claim of falsity in Potter's affidavit by thirteen declarations from other individuals whose trash was searched by MET. In each instance MET officers swore they found "marijuana leaves and stems recently cut from a mature marijuana plant" and that "the marijuana was fresh green and still moist." In each instance, these thirteen individuals swore they placed no marijuana or products of marijuana in their trash.

The Baldwins' further evidence is that the "rain drop" irrigation equipment was only for outdoor landscaping and that this fact should have been obvious to a trained narcotics investigator. The equipment included a sprinkler spraying water up to 14 feet, a soaker hose, and 6″ heavy duty support stakes; none of these items are used in an indoor grow. The two black gardening pots pointed to no illegal activity. The "grow rock" in Potter's affidavit was, the plaintiffs also state, a lava rock with no implication of criminal activity.

In the early dawn of the day that Potter obtained the warrant, according to the sworn declaration of Michael Baldwin, a group of five officers including Potter entered Baldwin's home "para-military style" without knocking. Officer Reed encountered Baldwin as Baldwin came into the house from the back door. Reed pointed his gun at him and ordered him to lie down. Baldwin complied with the order. Reed "then pushed his gun at the rear of [Baldwin's] head and placed his knee in the small of [Baldwin's] back, all the while pressing a loaded firearm against the back of [Baldwin's] head." Baldwin was terrified that the gun would go off.

According to the sworn deposition of Georgia Chacko, she was clothed only in a T-shirt and cotton briefs and just getting up to start her day when she opened her bedroom door to be confronted by a flashlight in her face and fingers sharply poking five to seven times at her throat and forcing her back into the bedroom. A voice told her to get on the floor. A gun was pointed at her, then brought into contact with her head for 30 seconds. She got on the ground. The unidentified gunman kneed her in the small of her back and handcuffed her. The gunman was Potter.

### PROCEEDINGS

On October 12, 2001, the plaintiffs filed their first amended complaint. The County moved for summary judgment on the ground of the qualified immunity of the officers. On April 2, 2004, the district court denied the motion, ruling that triable material issues of fact existed as to the plaintiffs' claims of excessive force, judicial deception, and conspiracy by the MET team, all in violation of 42 U.S.C. § 1983; state law claims similarly remained open to credibility determinations by a jury.

The County appeals.

## ANALYSIS

**[1]** *Jurisdiction*. Where there is a dispute as to material issues of fact, we have no jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). On the face of the district court's decision finding disputed facts, we are prevented from proceeding further. The County avoids dismissal, however, by stating that it "accepted the Baldwins' evidence for purposes of summary judgment, thereby obviating any alleged factual disputes" and that therefore "no factual disputes preclude appellate jurisdiction over this interlocutory appeal." The appeal is directed only to denial of immunity if the plaintiffs' facts are accepted; so the appeal is directed to appealable issues of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Although the defendants have found it hard to stick to their concession and occasionally appear to dispute the facts, we take them at their word and for this appeal accept only the plaintiffs' version of what happened. The facts for this appeal are not alleged, they are admitted. Consequently, we have jurisdiction.

**[2]** *Excessive force*. The County argues that "objectively reasonable" officers could have believed that "the exigency of the entry" justified the batteries on the plaintiffs. On the conceded facts before us, whatever exigency existed was insufficient to justify the batteries. Baldwin was a practicing dentist. Nothing in the record indicates that the officers had reason to believe that he would resist or flee. The officers had stated no belief that the plaintiffs would be armed; they mentioned no criminal history or conspiracy that could have justified such a belief. They had no reason not to identify themselves before giving orders to the plaintiffs. Invading a home in the early morning, they have stated no fact justifying their batteries. They violated the civil right of the plaintiffs to be free from battery by gun-wielding officers, a right established in this circuit since 1984. *McKenzie v. Lamb*, 738 F.2d 1005, 1010 (9th Cir. 1984) (Kennedy, J.). Potter's fingers at the throat of Baldwin's wife constitute a separate battery that a reasonable officer would know was excessive. The governmental inter-

ests in using handcuffs are at their maximum when "a warrant authorizes a search for weapons and a wanted gang member resides on the premises." *Muehler v. Mena*, 125 S. Ct. 1465, 2005 WL 645221 at *4 (March 22, 2005). Conversely, governmental interests are at a minimum when the searchers assert no belief that weapons will be found and no belief other than that the occupants of the house are a practicing dentist and his wife. We conclude that "the law at th[e] time [of the search] . . . clearly establish[ed] that the officer's conduct could violate the constitution." *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2005).

**[3]** *Judicial Deception*. The Fourth Amendment is the guarantee of every citizen that his home will be his castle, safe from the arbitrary intrusion of official authority. It is no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate. This obvious truth is met by the County with the argument that we should redact Potter's affidavit, purge it of its lies, and find what remains sufficient to justify the issuance of the warrant. *See Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997). Objectively, the County adds, there was enough to justify a search. Its arguments are unpersuasive.

First, when Potter's lies are taken out, what is left is an unidentified citizen at an unidentified date telling a sheriff's deputy of marijuana growing at an unidentified time; also the presence of a rock and two pots, the uses of which are ambiguous. No magistrate could have authorized a search on this basis, essentially amounting to an informant's tentative tip.

**[4]** Second, the County shifts its ground in arguing that "objectively" — that is, not within Potter's affidavit — there were facts justifying the search: .08 grams of burnt marijuana, "virtually unrecognizable as marijuana," are conceded to have been in the trash by the plaintiffs. The County cites in support of its argument *Devenpeck v. Alford*, 125 S. Ct. 588 (2004), holding that not the officer's motive in making an arrest but

the objective circumstances are to be considered by a court judging the officer's action. *Devenpeck* does not speak to our case. Here, it is what facts were alleged to induce the magistrate to act. Plainly, Potter's lies were substantial in moving the magistrate. The force of the lies on the mind of the magistrate cannot be bleached out.

The County invokes a fundamental case on the Fourth Amendment, *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* does permit a court to purge the false statements and to sustain the warrant if the unpurged residue would justify it. But what will sustain the warrant must already be within it. The County is pointing to evidence not cited in the warrant. That evidence cannot sustain the warrant. *See United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983) (under *Franks*, "[t]he fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.").

**[5]** The plaintiffs' established civil rights were violated by presentation of the false affidavit. *Liston,* 120 F.3d at 972-73. Qualified immunity was rightly denied.

**[6]** *Conspiracy*. Conspiracy to violate a citizen's rights under the Fourth Amendment by lying to the magistrate is evidently as much a violation of an established constitutional right as the perjury itself. Whether there is sufficient evidence of the conspiracy is for a jury to decide. No immunity exists for the conspiracy.

AFFIRMED.