**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MEGAN KRAINSKI,
             *Plaintiff-Appellant,*

v.

STATE OF NEVADA EX. REL.
BOARD OF REGENTS OF THE NEVADA
SYSTEM OF HIGHER EDUCATION, on
behalf of University of Nevada,
Las Vegas; REBECCA MILL;
RICHARD CLARK; PHILLIP BURNS;
NANNETTE JIMINEZ; SUSAN
CARRASCO; TYREE PINI; LESLIE
WALLENFELDT; BRETT GOFF; L.
TRAMPOSCH; J. CULVER; KENYA
POLEE,
             *Defendants-Appellees.*

No. 08-17523

D.C. No.
2:08-cv-00417-JCM-
GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued December 3, 2009
Submitted August 2, 2010
San Francisco, California

Filed August 2, 2010

Before: Betty B. Fletcher, Sidney R. Thomas and
N. Randy Smith, Circuit Judges.

Opinion by Judge Thomas;
Partial Concurrence and Partial Dissent by
Judge B. Fletcher

11097

---

**COUNSEL**

Jason Bach; Las Vegas, Nevada; for the appellant.

Richard C. Linstrom; Las Vegas, Nevada; Susan Carrasco O'Brien; Las Vegas, Nevada; Christian James Gabroy; Henderson, Nevada; for the appellees.

---

**OPINION**

THOMAS, Circuit Judge:

Megan Krainski appeals the district court's dismissal of her Section 1983 action against the University of Nevada, Las Vegas ("UNLV")[1] and various UNLV employees ("UNLV Employees")[2] in their personal and official capacities. Krainski alleges constitutional and state law violations arising from an altercation with her former roommate, Kenya Polee, that led to Krainski's arrest and subjection to university discipline.[3]

---

[1]State of Nevada ex. Rel. Board of Regents of the Nevada System of Higher Education, on behalf of the University of Nevada.

[2]The "University Employees" include Rebecca Mills, Vice President for Student Life; Richard Clark, Director of Student Conduct and Residential Life; Phillip Burns, Senior Student Conduct Officer; Nannette Jimenez, Student Conduct Officer; Susan M. Carrasco, Assistant General Counsel; Tyree Pini, Assistant Residential Life Coordinator; Leslie Wallenfeldt, Assistant Residential Life Coordinator; and UNLV police officers Brett Goff, L. Tramposch, and J. Culver.

[3]Krainski also named Polee as a defendant. Polee responded by filing a third-party complaint with cross-claims in which she sought to implead

The district court dismissed Krainski's federal claims with prejudice and declined to exercise jurisdiction over the remaining state law claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

According to Krainski's complaint, Krainski and Polee roomed together in residential housing at UNLV. According to the complaint, Polee was "a prominent student-athlete at UNLV, listed on the University's website as 'the top long jumper for the Rebels . . . among the top long jumpers in the MWC (Mountain West Conference).' " Krainski's complaint states that her troubles began on September 10, 2007, when she met with Defendant Wallenfeldt and "advised her of ongoing harassing and threatening behavior" by Polee. Krainski alleges that, in "retaliation for her making a complaint against a star athlete":

> 27. On September 11, 2007, Defendants WALLEN-FELDT and PINI contacted Defendant POLEE, without Plaintiff's consent and in breach of confidentiality, and informed her of the allegations made by Plaintiff and conspired with Defendant POLEE to fabricate a story about Plaintiff attempting to attack POLEE with a pair of scissors, all before Plaintiff would have an opportunity to file a formal complaint against Defendant POLEE.

Yvonne Scott-Williams, head coach of the UNLV track team, as a third-party defendant. Polee alleged that UNLV and Williams wrongfully removed her from the track team and revoked her scholarship in retaliation for her defense of Krainski's lawsuit; she also sought a preliminary injunction reinstating her onto the track team. The district court dismissed Polee's federal claims and denied the motion for a preliminary injunction. We disposed of Polee's appeal in *Krainski v. Mill*, 356 Fed. App'x 951 (9th Cir. 2009) (unpublished).

28. Defendants WALLENFELDT, PINI, and POLEE then contacted UNLV Police and made false statements to police officer [sic] in an attempt to have Plaintiff arrested.

29. Defendant Officers GOFF, TRAMPOSCH, and CULVER, knew, or should have known, that the allegations made by Defendant POLEE were false, but arrested Plaintiff for the alleged crime of Assault with a Deadly Weapon.

30. Prior to making the arrest, Defendant Officers GOFF, TRAMPOSCH, and CULVER did not conduct any investigation into the claims made by Defendant POLEE, and had no probable cause or warrant to arrest Plaintiff.

As a result of these actions, Krainski alleges that she was wrongly incarcerated, restricted of her liberty, and subjected to psychological harm.

Krainski further alleges that UNLV, Mills, Clark, Burns, Jimenez, and Carrasco then proceeded to wrongly initiate student disciplinary proceedings against her. Her complaint explains:

32. In October 2007, Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ, and CARRASCO brought formal charges against Plaintiff for alleged violations of the University of Nevada, Las Vegas Student Conduct Code . . . .

33. Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ, and CARRASCO failed to provide Plaintiff with proper notice of the formal hearing . . . .

34. Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ, and CARRASCO held a formal hearing

on November 13, 2007, at which time they each failed to allow Plaintiff to be represented and/or assisted by her advisers, despite the explicit representation made by Defendants that Plaintiff would be allowed to be represented and/or assisted by said advisers, intentionally causing Plaintiff to be ineffective at representing herself at said hearing . . . .

35. Despite the fact that no evidence was ever presented to support any of the allegations made against Plaintiff, Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ, and CARRASCO found Plaintiff to be "Responsible" of said charges, completely ignoring the evidence that exonerated Plaintiff, forever tarnishing the educational transcript and record of Plaintiff, as well as causing severe psychological and physical injuries . . . .

Krainski alleges that the defendants' actions "depriv[ed] her of the opportunity to obtain an education and further her career."

Krainski raised three constitutional claims before the district court: procedural due process under the Fifth and Fourteenth Amendments; substantive due process under the Fifth and Fourteenth Amendments; and Fourth Amendment unlawful arrest and imprisonment. In addition to monetary damages, she sought "a Permanent Injunction, prohibiting the Defendants and their agents from placing a hold on her academic transcript or placing any notation of findings or sanctions against her in her student file or upon her transcript."

UNLV and the UNLV Employees subsequently filed a motion to dismiss Krainski's complaint. The district court granted the motion, reasoning that Eleventh Amendment immunity barred Krainski's constitutional claims against UNLV and the UNLV Employees in their official capacities, and that qualified immunity barred Krainski's federal claims

against the UNLV Employees in their personal capacities. Additionally, the district court determined that Krainski failed to state a claim for violation of her Fourth Amendment rights, her substantive due process rights, and her procedural due process rights. After dismissing Krainski's federal claims with prejudice, the district court declined to exercise jurisdiction over the remaining state law claims. This timely appeal followed.

## II

**[1]** The district court did not err in dismissing Krainski's claims against UNLV and the UNLV Employees in their official capacities, a decision we review de novo. *Yakima Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999).

**[2]** "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984)). The Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986).

Eleventh Amendment immunity also shields state officials from official capacity suits. *See Central Reserve Life of N. Am. Ins. Co. v. Struve ("Central Reserve")*, 852 F.2d 1158, 1160-61 (9th Cir. 1988). A narrow exception exists "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's *federal* constitutional or statutory rights." *Id.* at 1161 (emphasis in original); *see also Papasan*, 478 U.S. at 277-78; *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 660 (9th Cir. 2009) ("[A] plaintiff may . . . maintain a federal action to compel a state official's prospective compliance with the plaintiff's federal rights.") (citations omitted).

**[3]** We conclude that the district court properly dismissed Krainski's claims against UNLV under the Eleventh Amendment. Krainski concedes that the Nevada University system and its constituent institutions are agencies and instrumentalities of the State of Nevada within the meaning of the Eleventh Amendment. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 n.17 (9th Cir. 2004) (noting that the Nevada System of Higher Education is immune from suit under the Eleventh Amendment). Accordingly, the district court properly dismissed Krainski's claims against UNLV.

**[4]** The district court also properly dismissed the claims against the UNLV Employees in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (clarifying that suits against state officials in their official capacity are no different from suits against the state itself).

**[5]** Krainski also asserts a theory under *Monell* that her constitutional rights were infringed by a "de facto policy" of UNLV and the UNLV Employees. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 n.55, 691 (1978). However, the Supreme Court has expressly declined to extend *Monell*'s theory of municipal liability under § 1983 to state entities. *Will*, 491 U.S. at 70-71. Accordingly, Krainski may not bring an action against UNLV or the UNLV Employees in their official capacities under *Monell*.

### III

The district court properly dismissed Krainski's constitutional claims against the UNLV Employees in their personal capacities on the basis of qualified immunity.

**[6]** State officials are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzger-*

*ald*, 457 U.S. 800, 818 (1982). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Al-Kidd*, 580 F.3d at 964 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "It is within our 'sound discretion' to address these two prongs in any sequence we see fit." *Al-Kidd*, 580 F.3d at 964 (quoting *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009)).

A

**[7]** The district court properly concluded that UNLV police officers Goff, Tramposch and Culver violated Krainski's Fourth Amendment right to be free from warrantless arrest absent probable cause. A warrantless arrest must be supported by probable cause to comport with the Fourth Amendment. *Henry v. United States*, 361 U.S. 98, 102 (1959). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *Id.* "[E]ven if the officers were mistaken that probable cause to arrest . . . existed, they are nonetheless immune from liability if their mistake was reasonable." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991) (citation and footnote omitted).

**[8]** Here, Krainski herself admitted that UNLV police officers Goff, Tramposch and Culver arrested her pursuant to statements by Polee and two UNLV Residential Life Coordinators and other investigative information indicating that Krainski had attacked Polee with a pair of scissors. Krainski failed to allege in her complaint or at oral argument any facts

suggesting that any of the officers had a reason to suspect the falsity of the statements made by the victim and two other university employees; instead, she merely alleged in a conclusory fashion that the officers "knew, or should have known, that the allegations . . . were false" and that they failed to conduct an adequate investigation. The record does not contain any information that would create a genuine issue of material fact as to whether the officers had facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and that Krainski was the perpetrator. We conclude that qualified immunity applies, as "a reasonable police officer could have believed that his or her conduct was lawful" when arresting a suspect following a report from two university employees and a student alleging an attack. We thus affirm the district court's dismissal of Krainski's Amendment Fourth cause of action against the UNLV Employees based on the defendants' entitlement to qualified immunity.

B

The district court did not err in concluding that qualified immunity precluded Krainski's substantive due process claims against the individual defendants. In order to determine the viability of a qualified immunity claim, we determine whether the defendants violated a constitutional right and whether the constitutional right was clearly established at the time of the defendants' actions. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Under *Pearson v. Callahan*, 129 S.Ct. 808, 821 (2009), we may begin the qualified immunity analysis by considering whether there is a violation of clearly established law without determining whether a constitutional violation occurred.

**[9]** The guarantee of substantive due process provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The "liberty" guaranteed by the Due Process Clause has yet to be fully circum-

scribed and presents "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, and which also recognizes . . . that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Raich v. Gonzales*, 500 F.3d 850, 862 (9th Cir. 2007) (quoting *Poe v. Ullman*, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting)). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citations omitted).

Krainski claims that her right of substantive due process was violated when a university official allegedly placed an unwarranted disciplinary notation on her transcript.[4]

To determine whether a constitutional right has been "clearly established" for qualified immunity purposes, we must "survey the legal landscape and examine those cases that are most like the instant case." *Trevino v. Gates,* 99 F.3d 911, 917 (9th Cir. 1996) (citations omitted). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

[10] Krainski has been unable to present us with any binding or persuasive authority for the proposition that a substantive due process violation occurs when a university official places an unwarranted disciplinary notation on a transcript. The only case that has been cited to us as supporting that proposition is *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985). There, the Supreme Court considered a public university student's dismissal on academic grounds from a six-year degree program. *Id.* at 215-16. The Supreme Court denied the student's substantive due process claim on

---

[4]The defendants dispute that any disciplinary notation was placed on her transcript, and Krainski has not placed the transcript into evidence.

factual grounds, "assum[ing] the existence" of a constitutionally protected interest that derived from "an implied contract right to continued enrollment free from arbitrary dismissal." *See id.* at 223; *see also id.* at 228-29 (Powell, J., concurring) (arguing that it was "unnecessary to assume the existence" of such a "dubious" right). Krainski's case presents a weaker claim to substantive due process protection than in *Ewing*, as she does not allege that she was suspended or dismissed from the university, but merely that she received a disciplinary notation on her record. In the absence of any other precedent affirming a substantive due process violation under facts analogous to those here, we are compelled to conclude that the contours of the right Krainski asserts were not sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. Accordingly, we affirm the district court's dismissal of the claim on the basis of qualified immunity without reaching the underlying constitutional question.

C

Finally, Krainski alleges that UNLV and various UNLV Employees violated her procedural due process rights in connection with a school disciplinary hearing. Qualified immunity protects the school officials from these claims.

**[11]** A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection. *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

As we have previously noted, the doctrine of qualified immunity protects state actors when the constitutional right at issue was not "clearly established" at the time of the actions at issue. *Saucier*, 533 U.S. at 202. Here, the law was not clearly established that the type of injury Krainski alleges

constituted a constitutionally protected "liberty" or "property" interest.

The Supreme Court has had occasion to consider this threshold inquiry in several cases. First, in *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that temporary suspensions of public high school students without notice or a hearing implicated the students' protected interest in "avoid[-ing] unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." *Id.* at 576. The Court reasoned that, "[h]aving chosen to extend the right to an education to people of appellees' class generally, [the state] may not withdraw that right on grounds of misconduct absent, fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574.

In *Board of Regents v. Roth*, the Supreme Court held that an assistant professor without tenure at a state university had no constitutionally protected liberty or property interest in his continued employment by the university. 408 U.S. 564, 569 (1972). In so holding, the Court observed in dicta that there was "no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573.

**[12]** Finally, in *Paul v. Davis*, the Supreme Court expressly circumscribed the reach of both *Roth* and *Goss* and held that "reputation alone, apart from some more tangible interests," does not constitute " 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 464 U.S. 693, 693, 701, 709-10 (1976); *see also WMX Technologies, Inc. v. Miller*, 80 F.3d 1315, 1319 (9th Cir. 1996) (announcing that *Paul* established a "stigma-plus test"). The plaintiff in *Paul* had challenged the dissemination to hundreds of merchants by police of a flyer listing him as an "active shoplifter" and depicting his image. 464 U.S. at 695-96. Although he alleged that the "shoplifter" designation

would damage his reputation and "seriously impair his future employment opportunities," the Supreme Court held that he did not state a claim for violation of his procedural due process rights. *Id.* at 697, 711-12.

**[13]** Here, Krainski does not allege that the UNLV Employees suspended or expelled her for her conduct, or that she was otherwise deprived of an entitlement to education conferred by the state or secured by some other independent source or understanding. She instead alleges that the defendants damaged her reputation by charging her with violations of the Student Conduct Code; finding her "Responsible" of those charges; and "tarnishing [her] educational transcript and record." Such allegations amount to mere reputational injury within the meaning of *Paul* and, without more, do not rise to the level of a deprivation of a constitutionally protected liberty or property interest. Krainski's allegation of "loss of future income" is materially indistinguishable from the *Paul* plaintiff's assertion that the defamatory flyer would "impair his future employment opportunities." Likewise, allegations of "psychological trauma" are not sufficient to satisfy *Paul*'s "stigma-plus" test. *Rolon v. Henneman,* 517 F.3d 140, 148 (2d Cir. 2008) (humiliation, embarrassment, and emotional distress are not cognizable protected interests under *Paul*). Nor are or conclusory suggestions of the "loss of liberty." *Sprecher v. Graber,* 716 F.2d 968, 976 (2d Cir. 1983) (speculative allegations as to loss of liberty insufficient). Thus, without opining as to the constitutionality of the conduct, we can easily conclude that the law was not clearly established at the time so as to put a reasonable official on notice that the actions might violate the constitution.

The district court properly granted judgment against Krainski on her claim for violation of procedural due process rights.[5]

---

[5]Krainski did not suggest in her complaint, her briefing, or at oral argument that the absence of counsel at the disciplinary hearing violated the constitution. At oral argument, she admitted that the defendants permitted

IV

**[14]** The district court did not abuse its discretion in denying Krainski leave to amend her complaint. *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (citation omitted). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Here, Krainski conceded that there were no new facts that she would include in her complaint to overcome its shortcomings. Under the circumstances, we conclude that the district court did not abuse its discretion in denying Krainski leave to amend her complaint.

**AFFIRMED.**

---

B. FLETCHER, Circuit Judge, concurring in part and dissenting in part:

The district court erred by dismissing Krainski's Fourth Amendment claim and abused its discretion by dismissing the complaint without leave to amend. I therefore respectfully dissent from the portion of the majority's opinion that affirms the district court's decision in those respects.

---

an attorney to attend the hearing with her and conceded that she was not arguing that she was entitled to representation at the hearing. Therefore, the First Circuit's decision in *Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978), is inapposite to the circumstances presented here, and we decline to address the circumstances raised in that case.

If the UNLV police officers who arrested Krainski knew or should have known that the allegations against her were false, the police officers would have violated the Fourth Amendment's clearly established prohibitions. *See Baldwin v. Placer County*, 418 F.3d 966, 970-71 (9th Cir. 2005). The majority, however, deems Krainski's Fourth Amendment claim too conclusory to survive.

Krainski's complaint is more than "legal conclusions" or a "recital[ ] of the elements of a cause of action," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009), because she alleges more than simply that UNLV police lacked probable cause to arrest her. She alleges in some detail the factual circumstances under which the arrest took place. *See* Majority Op. at 11102-03. She also alleges facts that explain *why* the police lacked probable cause — namely, that the police "knew, or should have known, that the allegations [against her] were false."

That allegation is enough to satisfy Federal Rule of Civil Procedure 8(a) and to survive a motion under Rule 12(b)(6). The Supreme Court has expressly approved as adequate an analogous complaint alleging negligence. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 n.4 (2002) (quoting Fed. R. Civ. P. app. Form 9 (2000)). "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Fed. R. Civ. P. app. Form 9.[1] Just as Krainski's complaint does with respect to her Fourth Amendment claim, Form 9 sketches the factual circumstances out of which the legal claim for negligence arose — when, where, and in general terms, how the claim arose. But Krainski's complaint alleges more, for she explains not only the surrounding circumstances but the precise manner in which the police lacked probable cause to arrest her. Form 9,

---

[1]"The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84.

by contrast, simply alleges negligence without specifying *why* the driver was negligent (by driving too quickly, for example, or by being distracted). Krainski has adequately stated a claim for a violation of the Fourth Amendment.

Even if the majority were right that Krainski's Fourth Amendment allegations are conclusory, it would still be wrong to affirm the district court's dismissal without leave to amend.

The district court did not even address Krainski's request to amend her complaint. Because "[a] district court's failure to exercise discretion constitutes an abuse of discretion," *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1027 (9th Cir. 2007) (citation and quotation marks omitted), we should at least remand, requiring the district court to exercise its discretion one way or the other.

More importantly, it is easy to think of an amendment that could save the complaint from the majority's strictures — Krainski could specify why and how the police "knew, or should have known, that the allegations [against her] were false." The majority rightly acknowledges that "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Majority Op. at 11113 (quoting *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)). Here it is clear that the complaint *could* be saved by amendment, even under the majority's evaluation of the current complaint. Krainski is entitled to an opportunity to cure any inadequacies in the complaint.

The majority wrongly asserts that Krainski conceded there were no new facts that she could use to save her complaint. At oral argument, when asked about how he could amend the complaint, counsel for Krainski stated:

> We certainly are aware of many more facts now than we were when we first drafted the complaint. So

> essentially, the allegations we could add to the com-
> plaint at this point is to be more specific about the
> actual conspiracy that took place, who it occurred
> between, what school officials were actually
> involved in this.

Oral arg. at 4:46-5:10. Part of the alleged conspiracy, of course, was the fact that the police officers who made the arrest knew or should have known that the allegations against Krainski were false. Counsel was thus telling us that he could be "more specific" about how and why the police officers knew or should have known the allegations to be false. The majority posits a concession that was never made.

Krainski is entitled to discovery to substantiate the Fourth Amendment claim she properly alleges in her complaint; prepared to allege additional facts, she should also be allowed to amend her complaint.[2] I therefore dissent.

---

[2]I note specifically that her due process claim — that she was not allowed representation at the disciplinary hearing while criminal charges were pending against her — could be more explicitly stated in an amended complaint. *See Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978).