**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IRENEO RECINTO; BIENVENIDO GALAS, SR.; RICARDO PINERO; JUANITA QUIMBO; FLORENTINO S. TORRALBA; EDER ANDRADE; JOHN M. ASPIRAS, JR.; MARIA AGBUNAG; CORAZON AMBATA; OFELIA C. AMIO; BEATRIZ BUENA BALLAIS; RAMONA F. BATTUNG; LAUREANA E. BUNGAY; FLORENTINA DELOS SANTOS; CORA DIMLA; LOLITA EUGENIO; EUSTOQUIA B. FABER; MARIA D. GALANG; ESTER G. GALANG; FELIZA GALEON; JUANITA GILO; PACIENCIA M. MENDOZA; ANGELINA V. NATIVIDAD; ENGRACIA A. OCAMPO; SOLEDAD N. RESPITO; JULIE DE VERA; JOVITA SALAMAT; ANTONIETA VILLAREAL, *Plaintiffs-Appellants*, | No. 11-16341 D.C. No. 4:10-cv-04542-SBA OPINION |
| v. | |
| THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; ERIK K. SHINSEKI, Secretary of Department of Veterans Affairs; W. SCOTT GOULD, Deputy Secretary of Department of Veterans Affairs. *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
November 5, 2012—San Francisco, California

Filed February 7, 2013

Before: Robert D. Sack,* Ronald M. Gould, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Gould

## SUMMARY**

### Veterans Affairs

The panel affirmed the district court's judgment dismissing for failure to state a claim and for lack of subject matter jurisdiction claims brought by a group of Filipino World War II veterans and their widows who did not receive payments under the Filipino Veterans Equity Compensation Fund.

---

* The Honorable Robert D. Sack, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Under the Veterans Judicial Review Act of 1988, the district court does not have jurisdiction over claims that would require it to review a question of fact or law relating to or affecting veterans' benefits decisions. The panel held the Act barred review of plaintiffs' due process claim, and therefore the district court's dismissal of the claim was appropriate. The panel also held that it had jurisdiction to consider plaintiffs' equal-protection challenge to the Filipino Veterans Equity Compensation Fund. On the merits, the panel held that plaintiffs failed to state a claim for an equal protection violation.

## COUNSEL

Arnedo S. Valera (argued), Law Offices of Valera & Associates, Fairfax, Virginia, for Plaintiffs-Appellants.

Thomas M. Bondy and Henry C. Whitaker (argued), United States Department of Justice, Washington, D.C., for Defendants-Appellees.

## OPINION

GOULD, Circuit Judge:

This case involves a group of Filipino World War II veterans and their widows who did not receive payments under the Filipino Veterans Equity Compensation Fund ("FVEC"), a fund established by statute in 2009 to give a one-time payment to each qualifying service member. These veterans and their widows either: (1) were ineligible for benefits under the statute; or (2) qualified for benefits, but

were denied them because the Department of Veterans Affairs ("VA") could not verify military service. Plaintiffs contend that their Fifth Amendment rights to due process and equal protection were violated by the statute establishing the fund and by the VA's administration of it, resulting in their lack of payment. The district court dismissed Plaintiffs' claims with prejudice on the pleadings for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. We consider whether the district court's dismissal was correct.

# I

To place this appeal in context, we start with a refresher on World War II history, explain the FVEC and the benefits it provides, review the administrative process for filing and adjudicating claims, and then discuss Plaintiffs' claims.

# A

When World War II started, the Philippines were in transition: The islands were still a United States territory, but they had the right to self-governance in preparation for independence. The United States had military bases in the Philippines and could call the archipelago's armed forces into service. A few months after the surprise attack on Pearl Harbor, President Franklin Delano Roosevelt issued an executive order placing the Filipino military under the command of the United States Armed Forces of the Far East. As a result of this and similar initiatives, Filipino soldiers served alongside American troops in the Pacific Theater during World War II.

After the War, Congress passed the First Supplemental Surplus Appropriation Rescission Act of 1946, Pub. L. No. 79-301, 60 Stat. 6, 14 (1946) (codified as amended at 38 U.S.C. § 107(a)), and the Second Supplemental Surplus Appropriation Rescission Act of 1946, Pub. L. No. 79-391, 60 Stat. 221, 223 (1946) (codified as amended at 38 U.S.C. § 107(b)).  These acts transferred $200 million to the post-war Filipino military, but they disqualified certain Filipino fighters from receiving the same benefits enjoyed by active members of the United States Armed Forces.

## B

More than sixty years later, in February 2009, President Obama signed into law the American Recovery and Reinvestment Act of 2009 ("the Act"), which established the FVEC.  Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200–02 (2009).  The FVEC aimed to recognize the contributions made by Filipino World War II veterans and granted one-time, lump-sum payments to each of those who qualified under the Act.  *See id.* at § 1002(e).

Section 1002(d) of the Act reads:

> (d) ELIGIBLE PERSONS.—An eligible person is any person who—
>
>> (1) served—
>>
>>> (A) before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to

the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces under commanders appointed, designated, or subsequently recognized by the Commander in Chief, Southwest Pacific Area, or other competent authority in the Army of the United States; or

(B) in the Philippine Scouts under section 14 of the Armed Forces Voluntary Recruitment Act of 1945 (59 Stat. 538); and

(2) was discharged or released from service described in paragraph (1) under conditions other than dishonorable.

Veterans must have also filed a claim for benefits within the year after the statute's enactment. *Id.* at § 1002(c). If a qualifying veteran who filed a timely claim dies before receiving payment, a surviving spouse takes. *Id.* at § 1002(c)(2).

Qualifying United States citizens receive $15,000 under the FVEC, while non-citizens receive $9,000. *Id.* at § 1002(e). Acceptance of the payment constitutes "a complete release of any claim against the United States by reason of any [qualifying] service." *Id.* at § 1002(h)(1). The VA controls the application process, and applications "shall contain such information and evidence as the Secretary may require." *See id.* at § 1002(c)(1). The Secretary must administer FVEC claims "in a manner consistent with applicable provisions of title 38, United States Code, and other provisions of law." *Id.* at § 1002(j)(2).

**C**

To adjudicate veterans' claims, the VA uses a two-step process, beginning with a regional office that processes claims and makes an initial decision. *See Henderson ex rel. Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1200 (2011).  If a veteran is not satisfied with the decision made by the regional office, he or she may appeal it to the VA's Board of Veterans' Appeals, which makes the agency's final decision. *Id.*; *see also* 38 U.S.C. §§ 7101, 7104(a).

From there, benefits determinations may be appealed in the manner established by the Veterans' Judicial Review Act of 1988 ("the VJRA"), Pub. L. No. 100-687, div. A, 102 Stat. 4105 (1988) (codified in sections of 38 U.S.C.).  The VJRA established an Article I court called the United States Court of Appeals for Veterans Claims, which has exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. *See* 38 U.S.C. §§ 7251,7252(a), 7261.  On further appeal, decisions from the Court of Appeals for Veterans Claims are reviewed by the Federal Circuit.  38 U.S.C. § 7292(c)–(d).  A person aggrieved by decision of that circuit may seek review from the United States Supreme Court, but for most litigants the Federal Circuit will be the last stop. This case comes to us, rather than the Federal Circuit, because Plaintiffs here sought to characterize their claims as something other than an appeal of denial of benefits.

**D**

Plaintiffs are comprised of two groups.  The first contains seven Filipino veterans, all United States citizens, who filed claims for FVEC benefits within the requisite one-year filing window.  As part of their application for benefits, these

veterans attached proof of their membership in the Commonwealth Army of the Philippines. They were all notified that their claims were rejected by a letter reading as follows:

> Basic eligibility to VA benefits may be established upon verification of valid military service by the National Personnel Records Center ("NPRC") at St. Louis, [Missouri]. Based on the information/evidence you submitted with your claim, NPRC is unable to verify that you served as a member of the Commonwealth Army of the Philippines, including the recognized guerillas, in the service of the Armed Forces of the United States.

None of the veterans appealed this adverse decision to the Board of Veterans' Appeals.

The second group contains twenty-one widows of Filipino veterans. These women were never eligible for benefits under the FVEC because their husbands died before its enactment. None of them filed a claim with the VA.

Plaintiffs filed suit in the Northern District of California raising four constitutional claims. The district court dismissed these claims on the pleadings for lack of subject-matter jurisdiction and failure to state a claim upon which

relief can be granted.   Plaintiffs filed a timely appeal challenging the dismissal of two of their four original claims.[1]

The claims appealed by Plaintiffs are: (1) a due-process challenge to the VA's exclusive reliance on records from the NPRC to verify service history[2]; and (2) an equal-protection challenge to the FVEC's failure to provide Filipino veterans the same benefits enjoyed by veterans of the United States Armed Forces.

## II

We have jurisdiction to review the district court's dismissal of these claims under 28 U.S.C. § 1291.  We review *de novo* the district court's finding that it lacked subject-matter jurisdiction.  *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1027 (9th Cir. 2011).  We also review *de novo* the district court's dismissal for failure to state a claim upon which relief can be granted.  *Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008).

---

[1] The other two claims were not raised by Plaintiffs in their opening brief and so are waived.  *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief." (citations omitted)).

[2] Plaintiffs support this claim in part with allegations that NPRC records are incomplete because a fire at the records facility in 1973 destroyed more than sixteen million official records covering the World War II service period.

## III

We begin by considering whether the district court had jurisdiction to hear Plaintiffs' claims.

## A

The district court dismissed Plaintiffs' due-process challenge to the VA's use of NPRC records after finding that the VJRA and sovereign immunity barred review. We first address the VJRA's effect on jurisdiction.

We held in *Veterans for Common Sense v. Shinseki* that a district court does not have jurisdiction over claims that would require it to review a question of fact or law relating to or affecting veterans' benefits decisions. 678 F.3d 1013, 1022–25 (9th Cir. 2012) (en banc) ("First, Congress has expressly disqualified us from hearing cases related to VA benefits in [38 U.S.C.] § 511(a) . . . and second, Congress has conferred exclusive jurisdiction over such claims to the [Court of Appeals for Veterans Claims] and the Federal Circuit." (citations omitted)). Stated another way, if reviewing Plaintiffs' claim would require review of the circumstances of individual benefits requests, jurisdiction is lacking. *See id.* at 1034. "Benefits" include "any payment, service, . . . or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." *Id.* at 1026 (citing 38 C.F.R. § 20.3(e)). We must therefore evaluate both of Plaintiffs' claims to determine whether they require us to consider veterans' individual benefits decisions.

Plaintiffs contend that their due-process claim does not impel the court to look at the specifics of any individual veteran's case because it requires consideration of only the VA policy demanding verification of service from the NPRC, the history of the NPRC fire, and the exigent circumstances of World War II.  But in *Veterans for Common Sense* we held that we lacked jurisdiction to review a claim that average delays in the VA's provision of mental healthcare violated due process.  *Id.* at 1028.  We reasoned that "[t]he fact that [a plaintiff] couches [a] complaint in terms of *average* delays cannot disguise the fact that it is, fundamentally, a challenge to thousands of . . . benefits decisions made by the VA."  *Id.* at 1027.  And we noted that holding otherwise "would embroil the district court in the day-to-day operation of the VA."  *Id.* at 1028.

Similarly, we hold here that the VJRA bars review of Plaintiffs' due-process claim.  Even viewing Plaintiffs' claim as a systemic challenge rather than as a challenge to a group of individual VA decisions, we conclude that addressing the constitutionality of the VA's exclusive reliance on NPRC records to verify military service would necessarily require consideration of individual cases.  To determine whether the VA policy unfairly deprives veterans of a protected property interest, we would have to inquire into the circumstances of at least a representative sample of those veterans who were denied FVEC benefits based on the NPRC's inability to verify their service for the purpose of determining whether members of that sample could sufficiently prove their military service without NPRC verification.  *See Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 970 (9th Cir. 2010) (stating that a procedural due-process violation requires showing deprivation of a constitutionally protected interest and denial of adequate procedural protection).  Our

interpretation of the VJRA in *Veterans for Common Sense* forecloses this type of inquiry.   678 F.3d at 1027–28. Because we hold that the VJRA precluded the district court's review of this claim, the district court's dismissal of the claim was appropriate.   We do not consider whether sovereign immunity, the alternative basis supporting dismissal, also precludes review.[3]

   We next consider Plaintiffs' equal-protection claim.  In *Veterans for Common Sense*, we held that the VJRA did not bar jurisdiction over a facial challenge to the constitutionality of a statute because review of that challenge would not require consideration of "'decisions' affecting the provision of benefits to any individual claimant[]." *Id.* at 1034 (citing 38 U.S.C. § 511).  For the same reasons, we conclude that we have jurisdiction over Plaintiffs' facial equal-protection claim.  Evaluation of that claim only requires us to look at the text of the statute establishing the FVEC, nothing more.  To assess this claim we need not assess whether individual claimants have a right to veterans benefits.

---

[3] Plaintiffs allege for the first time on appeal that a transfer of this claim to the Court of Appeals for Veterans Claims is warranted under 28 U.S.C. § 1631.  But this argument is waived.  *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007) ("Because these arguments were not raised before the district court, they are waived." (citation omitted)).  Even if transfer had been properly requested, we doubt that § 1631 would apply because Plaintiffs did not appeal their initial VA decision to the Board of Veterans' Appeals and the Court of Appeals for Veterans Claims only reviews decisions from that court.  *See* 38 U.S.C. § 7252(a).  The claim therefore could not have been brought in the Court of Appeals for Veterans Claims when it was filed in the district court, as required by 28 U.S.C. § 1631.

**B**

Because we have determined that there is jurisdiction to review Plaintiffs' facial equal-protection challenge to the FVEC, we now consider whether the district court properly dismissed this claim under Federal Rule of Civil Procedure 12(b)(6).[4]

A complaint is properly dismissed under Rule 12(b)(6) unless it contains "enough facts to state a claim to relief that is plausible on its face." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)).   Well-pleaded factual allegations are taken as true, but conclusory statements or "bare assertions" are discounted.  *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *see also Iqbal*, 556 U.S. at 681.

Specifically, an equal-protection claim must assert that a plaintiff was treated differently than other similarly situated persons and that the disparate treatment was intentional.  *See Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*,

---

[4] The VA contends that Plaintiffs waived their remaining equal-protection claim because (1) they did not reallege on appeal that the FVEC does not satisfy rational basis review, and (2) they contend for the first time on appeal that the FVEC fails to satisfy strict scrutiny because it classifies the veterans on the basis of national origin. *See Kama*, 394 F.3d at 1238 (waiver applies to issues not raised by an appellant in the opening brief); *see also O'Guinn*, 502 F.3d at 1063 n.3 (waiver applies to issues not raised before the district court).  But we assume, without deciding, that the claim is not waived and consider whether the district court's dismissal was proper.

424 F.3d 1027 (9th Cir. 2005).  To avoid dismissal, a plaintiff must plausibly suggest the existence of a discriminatory purpose.  *See Iqbal*, 556 U.S. at 677.

Plaintiffs contend that the FVEC violates their right to equal protection because it gives fewer benefits to Filipino veterans than to veterans of the United States Armed Forces. But our circuit, as well as one of our sister circuits, has already held that the disparity in benefits created by § 107 of title 38, established by the Surplus Appropriation Rescission Acts, does not require strict scrutiny because it is based on status as a territory and not on the basis of race, nationality, or alienage and is constitutional under rational basis review. *See Besinga v. United States*, 14 F.3d 1356, 1360–62 (9th Cir. 1994) (holding that the "broad powers of Congress under the Territory Clause are inconsistent with the application of heightened judicial scrutiny" and finding several potential rational bases, including conserving finances, to support the law); *see also Quiban v. Veterans Admin.*, 928 F.2d 1154, 1160–62 (D.C. Cir. 1991) (rejecting an argument that strict scrutiny should apply because Filipino veterans are an insular minority and finding that limiting tax-funded social-welfare programs to United States veterans is a rational basis for the law).

Because of this precedent adverse to their equal-protection claims, Plaintiffs must show that the statute establishing the FVEC creates a new and distinguishable classification.  Plaintiffs contend that two provisions of the American Recovery and Reinvestment Act—the "Release" provision and the "Recognition of Service" provision—do just that.  *See* Pub. L. No. 111-5, §§ 1002(h)(1), (i), 123 Stat. at 201–02 (2009).

We first address the "Release" provision.  It reads:

> (h) RELEASE.—
>
> (1) IN GENERAL.—Except as provided in paragraph (2), the acceptance by an eligible person or surviving spouse, as applicable, of a payment under this section shall be final, and shall constitute a complete release of any claim against the United States by reason of any [qualifying] service . . . .
>
> (2) PAYMENT OF PRIOR ELIGIBILITY STATUS.—Nothing in this section shall prohibit a person from receiving any benefit (including health care, survivor, or burial benefits) which the person would have been eligible to receive based on laws in effect as of the day before the date of the enactment of this Act.

*Id.* at § 1002(h)(1).  The statutory language preserves the benefits granted to veterans under 38 U.S.C. § 107.  This provision does not forfeit any benefits that Filipino veterans currently receive under the status quo and creates no new classification to be challenged.

Plaintiffs next argue that the "Recognition of Service" provision within the American Recovery and Reinvestment Act of 2009 creates a new classification by altering § 107. That provision reads:

> (i) RECOGNITION OF SERVICE.—The [qualifying] service of a person . . . is hereby

> recognized as active military service in the
> Armed Forces for purpose of, and to the
> extent provided in, this section.

Pub. L. No. 111-5, § 1002(i), 123 Stat. at 202 (2009). But the
provision's plain language limits the recognition of service to
§ 1002 and administration of the FVEC. *See In re Meruelo
Maddux Props., Inc.*, 667 F.3d 1072, 1076 (9th Cir. 2012)
("Where the statute's language is plain, the sole function of
the courts is to enforce it according to its terms, for courts
must presume that a legislature says in a statute what it means
and means in a statute what it says there." (quoting *Int'l Ass'n
of Machinists & Aerospace Workers v. BF Goodrich
Aerospace Aerostructures Grp.*, 387 F.3d 1046, 1051 (9th
Cir. 2004) (citations and internal quotation marks omitted))).
Nothing in the American Recovery and Reinvestment Act
suggests that the "Recognition of Service" provision alters
38 U.S.C. § 107 and the limitations imposed by that statute.

Indeed, other provisions of § 1002 of the American
Recovery and Reinvestment Act acknowledge and preserve
the limitations in 38 U.S.C. § 107. *See* Pub. L. No. 111-5,
§§ 1002(a)(5), (h)(2), (j)(2), 123 Stat. at 200–02 (2009). We
consider the statute as a whole and hold that the "Recognition
of Service" provision does not affect our previous decisions.
*See Exxon Mobile Corp. v. E.P.A.*, 217 F.3d 1246, 1249 (9th
Cir. 2000) ("In interpreting the intent of Congress, it is
essential to consider the statute as a whole." (citations
omitted)). Because Plaintiffs' complaint did not challenge a
new classification established by the Act and did not allege
any plausible facts suggesting that the classification in
38 U.S.C. § 107 was created for a discriminatory purpose, we
hold that the district court did not err when it dismissed this
claim under Federal Rule of Civil Procedure 12(b)(6).

## IV

For the foregoing reasons, all of Plaintiffs' claims were properly dismissed by the district court on the pleadings.

**AFFIRMED.**